Joseph K. BAGDONAS, Plaintiff–Appellant,

v.

DEPARTMENT OF TREASURY, United States of America, and Bureau of Alcohol, Tobacco and Firearms, Defendants–Appellees.

No. 95–2143.

United States Court of Appeals, Seventh Circuit.

Argued Jan. 10, 1996.

Decided Aug. 23, 1996.

Tracy C. Beggs (argued), Burditt & Radzius, Chicago, IL, Brian Frankl, Peterson & Ross, Chicago, IL, for Plaintiff-Appellant.

Jack Donatelli, Sherri L. Thornton (argued), Office of the U.S. Attorney, Civil Division, Appellate Section, Chicago, IL, James B. Burns, Office of U.S. Attorney, Chicago, IL, Thomas P. Walsh, Office of the U.S. Attorney, Civil Division, Chicago, IL, for Defendants-Appellees.

Before BAUER, FLAUM and RIPPLE, Circuit Judges.

RIPPLE, Circuit Judge.

When Joseph Bagdonas was convicted of the illegal possession and sale of an unregistered weapon, one of the penalties imposed on him was loss of the right to possess firearms. After he served his sentence and probationary period, he sought relief from that disability. He applied to the Director of the Bureau of Alcohol, Tobacco and Firearms (BATF), who, as the delegatee of the Secretary of the Treasury, is authorized to make the final decision on the application. The BATF denied his application. Mr. Bagdonas then sought review of that decision in the district court. The court granted summary judgment to the Secretary and the BATF. Mr. Bagdonas now appeals that judgment.

I

BACKGROUND

The underlying facts in this case are not disputed. Mr. Bagdonas was convicted in June 1979 for the illegal possession and sale of an unregistered silencer-fitted gun (a

weapon he had made from lawn mower mufflers) to BATF agents. *See* 26 U.S.C. § 5861. He was sentenced to a term of five years; thirty days was spent in prison and the remainder on probation. As a result of the conviction, Mr. Bagdonas was prohibited from possessing any firearms or ammunition. 18 U.S.C. § 922(g)(1).[1] However, in November 1986 he applied for relief from the disabilities imposed under section 922(g)(1). He sought restoration of his firearms privileges under 18 U.S.C. § 925(c).[2]

In its consideration of Mr. Bagdonas' application, the BATF assigned Special Agent Howard A. Marcus to interview Mr. Bagdonas, the neighbors and acquaintances that he listed as character references, present and past employers, an undercover BATF agent who was present at Mr. Bagdonas' arrest, and two former parole officers. The investigator also checked Mr. Bagdonas' military and law enforcement records.

Many of the responses received from these interviews were positive. Mr. Bagdonas was reported to be a good tenant, a friendly and quiet neighbor who kept to himself, and an outstanding and dedicated employee. The investigation uncovered no arrests after his 1979 arrest on the federal firearms charge. However, the special agent learned some negative information as well: (1) Mr. Bagdonas' military records indicated that he was discharged due to emotional instability after he had served less than 180 days of active duty. (2) In 1977, Mr. Bagdonas had been arrested and charged under Ohio law with improper handling of a loaded firearm; he was fined $100. (3) The circumstances surrounding Mr. Bagdonas' 1979 federal conviction involved the sale of three silencers. During the sale to the BATF agent, an associate of Mr. Bagdonas pointed a machine gun at the undercover BATF agent to "cover" Mr. Bagdonas. (4) A neighbor of Mr. Bagdonas at the trailer park stated that she was afraid of him. (5) One former employer told the agents that Mr. Bagdonas was untrustworthy.

In his report Special Agent Marcus concluded that Mr. Bagdonas might "act in a manner dangerous to public safety in the future, consistent with behavior from the past." R.19, Report of Investigation, at 10. He recommended that the application be denied. The Group Supervisor, Christopher P. Sadowski, and Special Agent in Charge, Hassel R. Caudill, each concurred in that recommendation. One operations officer disagreed with the recommendation, however, because, in his view, information in the investigation report was very positive.

Mr. Bagdonas' application for relief was denied on September 27, 1988.[3] After receiving that notification, on October 10, 1988, Mr. Bagdonas wrote Stephen Higgins, BATF Director, requesting the reasons for his deci-

---

1. 18 U.S.C. § 922(g), a provision of the Federal firearms statutes, states:

 It shall be unlawful for any person who has been convicted ... [of] a crime punishable by imprisonment for a term exceeding one year ... [to possess] any firearm....

2. 18 U.S.C. § 925(c) provides, in pertinent part:

 A person who has been convicted of a crime punishable by imprisonment for a term exceeding one year ... may make application to the Secretary [of the Treasury] for relief from the disabilities imposed by Federal laws with respect to the acquisition, receipt, transfer, shipment, or possession of firearms and incurred by reason of such conviction, and the Secretary may grant such relief if it is established to his satisfaction that the circumstances regarding the conviction, and the applicant's record and reputation, are such that the applicant will not be likely to act in a manner dangerous to the public safety and that the granting of the relief will not be contrary to the public interest.

3. The letter from the Director of the ATF states:

 We have carefully reviewed your application for restoration of Federal firearms privileges.

 Before we can grant restoration under 18 U.S.C. section 925(c), we must review all relevant facts regarding an applicant's conviction and assess the information required during an investigation of his record and reputation. This is necessary in order to establish to our satisfaction that the applicant is not likely to act in a manner dangerous to public safety and that the granting of restoration would not be contrary to the public interest.

 We regret to advise you that we are not presently satisfied that the above statutory requirements for granting restoration have been met. Therefore, we must deny your application for restoration of Federal firearms privileges at this time.

 R.23, Attach.A.

sion. In a letter dated June 28, 1989, the Director of the BATF stated that the previous denial of relief was fully supported, but informed Mr. Bagdonas that he could reapply in two years.[4] On August 30, 1993, he did reapply by asking for reconsideration of his earlier application. The BATF Director again denied his request.[5]

On May 3, 1994, Mr. Bagdonas filed a complaint in the district court seeking review of the BATF's denial of his application.[6] According to the complaint, the BATF considered only the negative responses in its investigation and then denied Mr. Bagdonas' application. The district court reviewed the administrative record and determined that the BATF did not act arbitrarily and capriciously when it denied relief to Mr. Bagdonas. Concluding that the BATF had a rational basis for its denial of Mr. Bagdonas' application for relief of federal firearms disability, the district court granted the Secretary's and BATF's motion for summary judgment and denied Mr. Bagdonas' cross-motion for summary judgment. *Bagdonas v. United States Department of Treasury, Bureau of Alcohol, Tobacco & Firearms,* 884 F.Supp. 1194 (N.D.Ill.1995).

## II

## DISCUSSION

### A.

A district court's ruling on cross-motions for summary judgment is reviewed de novo.

*Barefield v. Village of Winnetka,* 81 F.3d 704, 708 (7th Cir.1996). Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment is appropriate only when the record demonstrates that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). With cross-motions, our review of the record requires that we construe all inferences in favor of the party against whom the motion is made. *I.A.E., Inc. v. Shaver,* 74 F.3d 768, 774 (7th Cir. 1996).

 In this case the district court was asked to review a decision of the Bureau of Alcohol, Tobacco and Firearms. The court was required to set aside an agency action that it finds to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). *See Bradley v. Bureau of Alcohol, Tobacco and Firearms,* 736 F.2d 1238, 1240 (8th Cir.1984) (applying standard to BATF denial of restoration of firearms rights). That standard of review, established by the Administrative Procedure Act, is a narrow, highly deferential one. *Citizens to Preserve Overton Park, Inc. v. Volpe,* 401 U.S. 402, 416, 91 S.Ct. 814, 823–24, 28 L.Ed.2d 136 (1971). The district court must consider the agency action valid as long as it appears from the administrative

---

**4.** In this letter the Director informed Mr. Bagdonas that "[t]he denial of your application was primarily based upon information acquired during the background investigation of your record and reputation. As a result of our investigation, we determined that sufficient reasons existed at the time to prevent our being satisfied that the above statutory requirements had been met. After a review of your file, we must conclude that our investigative report fully supports our decision." R.23, Attach.B.

**5.** That letter also apprised Mr. Bagdonas that the BATF could not presently process applications for restoration of firearms privileges because newly enacted legislation had imposed budgetary restrictions upon BATF that precluded the Bureau from investigation of such applications. R.23, Attach.C. Mr. Bagdonas has not appealed that inability to process further applications. *See Rice v. United States Department of Alcohol, To-*

*bacco and Firearms,* 68 F.3d 702 (3d Cir.1995) (holding that congressional suspension of BATF funding for processing applications for restoration of firearms rights did not show clear intent to preclude judicial review of BATF refusals to grant relief and that lack of funding excused the requirement of exhaustion of administrative remedies). Nor has the government submitted that this legislation bars our acting in this case. *See United States v. McGill,* 74 F.3d 64 (5th Cir.) (holding that the limitation on BATF funds constitutes a congressional suspension of relief under 925(c)), *petition for cert. filed,* 64 U.S.L.W. 3856 (Apr. 15, 1996) (No. 95–2015).

**6.** 18 U.S.C. § 925(c) provides that "[a]ny person whose application for relief from disabilities is denied by the Secretary may file a petition with the United States district court for the district in which he resides for a judicial review of such denial."

record that the decision was supported by a "rational basis." *Bradley*, 736 F.2d at 1239–40; *cf. Kitchens v. Department of the Treasury*, 535 F.2d 1197, 1199–1200 (9th Cir.1976) (reviewing BATF Director's statement of reasons to determine whether the decision was arbitrary and capricious). However, narrow and deferential review does not equate with no review at all. The inquiry still must be thorough and probing. *Overton Park*, 401 U.S. at 415, 91 S.Ct. at 823. Most importantly, although the court is to "uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned," *Bowman Transp., Inc. v. Arkansas–Best Freight Sys., Inc.*, 419 U.S. 281, 286, 95 S.Ct. 438, 442, 42 L.Ed.2d 447 (1974), it may not supply a reasoned basis for the agency's action that the agency itself has not given. *SEC v. Chenery Corp.*, 332 U.S. 194, 196, 67 S.Ct. 1575, 1577, 91 L.Ed. 1995 (1947). "The statement of reasons need not include detailed findings of fact but must inform the court and the petitioner of the grounds of decision and the essential facts upon which the administrative decision was based." *Kitchens*, 535 F.2d at 1200. We must satisfy ourselves that the agency "examine[d] the relevant data and articulate[d] a satisfactory explanation for its action including a 'rational connection between the facts found and the choice made.'" *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43, 103 S.Ct. 2856, 2866–67, 77 L.Ed.2d 443 (1983) (quoting *Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156, 168, 83 S.Ct. 239, 245–46, 9 L.Ed.2d 207 (1962)); *see also Overton Park*, 401 U.S. at 415–16, 91 S.Ct. at 823–24; *Kitchens*, 535 F.2d at 1200.

**B.**

Upon examination of the opinion of the district court, it appears that the court may have misapprehended its obligation to focus on the reason given for the administrative action by the agency. *See Chenery Corp.*, 332 U.S. at 196, 67 S.Ct. at 1577. This analytical lapse is somewhat understandable because the agency, in its initial action on the application as well as on the requests for reconsideration, failed to give even the sort of explanation that would meet the very undemanding criteria that we have set forth in the proceeding section. Stripped of bureaucratic doublespeak, the agency's final decision and its subsequent disposition of the requests for reconsideration simply state that the agency does not believe that the statutory criteria have been met. Even under the deferential standard of review applicable here, this explanation is not satisfactory. A court cannot fulfill its statutory duty to review the agency's determination if the agency does not state, in even the most truncated fashion, the basis for its decision. *See Townson v. Secretary of the Treasury*, 896 F.Supp. 1155, 1158 (S.D.Ala.1995). Such laxity on the part of the agency not only prevents the court from fulfilling its mandate under the statute, it even prevents the petitioner from making a reasoned determination as to whether to seek further review. *See Matlovich v. Secretary of Air Force*, 591 F.2d 852, 857 (D.C.Cir.1978). The district court has no power to "cure" the agency's failure to fulfill its responsibilities by combing the record on its own in search of a theory that might support the agency's decision. *Chenery* forbids such judicial second guessing and, to the extent that the district court thought that such a course was permissible, it was in error.

The agency attempted to rectify the obvious lapse in its performance by filing, in the review action in the district court, a lengthy statement of its reasons for denying the application of Mr. Bagdonas. It is, of course, well settled that courts cannot accept counsel's post hoc rationalization for agency action. *See Motor Vehicle Mfrs. Ass'n*, 463 U.S. at 50, 103 S.Ct. at 2870; *Burlington Truck Lines*, 371 U.S. at 168, 83 S.Ct. at 245–46; *see also Overton Park*, 401 U.S. 402, 91 S.Ct. 814, 28 L.Ed.2d 136. Here, however, the agency provided something more than counsel's argument. It provided the court with an explanation for the agency's action submitted by the officer who had the authority to act on the application. Although this method is hardly the preferred approach to judicial review of even informal agency action, it may be, in some instances, the only

way to achieve effective and expeditious review of the administrative decision. *Overton Park,* 401 U.S. at 420–21, 91 S.Ct. at 825–26; *see also Camp v. Pitts,* 411 U.S. 138, 142–43, 93 S.Ct. 1241, 1244, 36 L.Ed.2d 106 (1973) (suggesting that additional explanation may prove necessary when the failure to explain administrative action has frustrated judicial review); *Townson,* 896 F.Supp. at 1158 (denying summary judgment to the BATF because the agency had not stated its reasons for denying the application, but suggesting that the agency might be able to produce a statement of reasons to support its denial). Such a submission ought to be "viewed critically," *Overton Park,* 401 U.S. at 420, 91 S.Ct. at 825–26. It also must be assessed, not standing alone, but in light of the entire administrative record. Id. at 419, 91 S.Ct. at 825. *See generally Lewis v. Babbitt,* 998 F.2d 880, 882 (10th Cir.1993).

Here, it is clear that the district court did not consider this affidavit submission as divorced from the entire administrative record. Rather, the court engaged in a thorough examination of the entire administrative record and, in the course of that review, determined that there was ample support for the reasons given by the BATF for the denial of the application. The district court noted that the record revealed a thorough investigation by the agency of the merits of the application and a complete airing of divergent views by subordinate officials before the final decision was made. The court noted that the agency had recognized the two firearms violations of the applicant and then weighed the generally, although not unanimously, favorable reports of employers against one unfavorable report from a neighbor. The agency also had taken into consideration, noted the court, that the applicant was discharged from the Armed Forces for emotional instability. The court examined and rejected Mr. Bagdonas' contention that the agency had focused only on the negative information and determined that this criticism was not valid.

■ Our own examination of the record convinces us that, despite the early lapse in its focus, the district court's determination is correct with respect to the administrative decision. We agree that the administrative record supports the judgment of the agency. Mr. Bagdonas' challenges cannot survive in light of the broad discretion given to the BATF Director under section 925(c). The statute places upon the Director the grave responsibility to ensure that the circumstances regarding Mr. Bagdonas' conviction, as well as his later work record and reputation, were such that Mr. Bagdonas "will not be likely to act in a manner dangerous to the public safety and that the granting of the relief will not be contrary to the public interest." 18 U.S.C. § 925(c). Because of this responsibility, the Director is given broad discretion, conferred upon him in section 925(c) and approved universally by courts, "to keep firearms away from the persons Congress classified as potentially irresponsible and dangerous." *Lewis v. United States,* 445 U.S. 55, 64–65, 100 S.Ct. 915, 920–21, 63 L.Ed.2d 198 (1980) (quoting *Barrett v. United States,* 423 U.S. 212, 218, 96 S.Ct. 498, 502, 46 L.Ed.2d 450 (1976) (discussing the arbitrary and capricious standard as it relates to the Gun Control Act of 1968)). When the Director reviews an investigative report that contains both positive and negative information about the applicant, therefore, the question is not whether there is more positive than negative information, but whether the information, when evaluated in its entirety, causes the Director to believe that the applicant might act in a manner dangerous to the public safety or contrary to the public interest. Even a single incident potentially could justify the Director's decision that relief should not be granted.

In this case, as we have noted previously, the denial of Mr. Bagdonas' application was based ultimately on evidence of Mr. Bagdonas' prior emotional instability, his criminal history, the circumstances of his violation of Federal firearms law, and the willful nature of that violation. It was very relevant that the disabling conviction was based on a violation of the Federal firearms laws; not only did Mr. Bagdonas sell unregistered weapons

to BATF undercover agents, but he allowed an associate to hold a machine gun pointed at the head of one agent. The restoration of firearms privileges following such an incident is a particularly grave matter. In addition, the investigation uncovered a complaint and fear about Mr. Bagdonas from a neighbor and reports of emotional instability in his military records. The Director certainly had a right to weigh this subsequent evidence in light of the circumstances surrounding Mr. Bagdonas' conviction. The statute gives to the Secretary's designee, not the court, the discretion to weigh favorable and unfavorable evidence and to choose among competing inferences. Our review is limited strictly to a determination whether the administrative ruling was arbitrary or capricious. We conclude that the record reflects a rational connection between the facts found and the choice made to deny Mr. Bagdonas' petition; the decision cannot be characterized as arbitrary and capricious.

## CONCLUSION

Despite our disapproval of the agency's initial handling of this matter—and with the expectation that we shall not see a similar performance again—we must conclude that, as the case comes to us, the Director's determination was not arbitrary, capricious, or unreasonable. Accordingly, the judgment of the district court is affirmed.

AFFIRMED.