Michael L. ST. CLAIR, Plaintiff–Appellant,

v.

SECRETARY OF NAVY, Defendant–Appellee.

No. 97–3993.

United States Court of Appeals, Seventh Circuit.

Argued May 18, 1998.

Decided Aug. 17, 1998.

B. Douglas Stephens (argued), Wessels, Stojan & Stephens, Rock Island, IL, for Plaintiff-Appellant.

Andrew B. Baker, Jr., Office of the United States Attorney, Dryer, IN, Geoffrey M. Coan (argued), Office of the Judge Advocate General, Alexandria, VA, for Defendant-Appellee.

Before CUMMINGS, ROVNER and EVANS, Circuit Judges.

TERENCE T. EVANS, Circuit Judge.

Michael St. Clair, a sailor, ran into trouble during the fall of 1991 when he was arrested, twice, for driving a motor vehicle while under the influence of alcohol over a span of several weeks. Because there seems to be no place for such a sailor in the nuclear submarine service of the United States Navy, the Navy gave St. Clair the heave ho with a general discharge rather than an honorable one. St. Clair has fought hard to get his discharge upgraded to honorable. Today we consider his appeal from a district court judgment that failed to go his way.

In 1991, St. Clair was serving as a machinist mate-engineering laboratory technician assigned to the nuclear submarine U.S.S. Archerfish stationed at the submarine base in New London, Connecticut. He was 27 years old. On September 29[1] civilian authorities in Mystic, Connecticut, arrested St. Clair for operating a motor vehicle under the influence of alcohol—an offense commonly referred to as OWI (operating while intoxicated) or DUI (driving under the influence). The naval counseling service recommended a mid-level course of treatment for alcohol addiction—a Naval Alcohol and Drug Safety Action Program ("NADSAP"). But before St. Clair received treatment, he landed in hot water again. Around midnight on October 29, while driving on the naval base, St. Clair ignored a stop sign and then accelerated away from the military police who signaled for him to pull over. After a brief pursuit St. Clair was arrested again. The military police contacted St. Clair's unit which, within an hour (according to St. Clair), sent a truck to pick him up. On the trip back to his unit, the frustrated St. Clair slammed his hand against the windshield, cracking the glass. St. Clair's conduct on October 29 led to charges of driving while intoxicated and destroying government property. The Navy again sent St. Clair to counseling. The counselor concluded that he was not psychologically dependent on alcohol, that he had the potential for useful service after receiving appropriate treatment, and that he was amenable to treatment. Along with again recommending a mid-level course of treatment, the counselor urged that St. Clair be held accountable for his actions.

Unfortunately for St. Clair, his commanding officer was not as sympathetic as the counselor. On November 8, 1991, the commander brought St. Clair before a nonjudi-

1. At times, the record says this incident happened on September 15.

cial proceeding known as a captain's mast on charges of drunk or reckless driving (Article 111 of the Uniform Code of Military Justice ("UCMJ"), see 10 U.S.C. § 911) and wrongful destruction of military property (Article 108 of the UCMJ, see 10 U.S.C. § 908). Not only did the commander punish St. Clair for the infractions, he initiated proceedings to administratively separate (i.e., discharge) St. Clair from the Navy. St. Clair requested a hearing before the Administrative Discharge Board ("ADB"). He presented evidence of his exemplary service—evaluations noting his high level of expertise and his commitment to the mission of his unit, and an efficiency report indicating outstanding performance in most categories and recommending promotion ahead of his peers. Nevertheless, on April 7, 1992, the ADB concluded that St. Clair had committed misconduct due to the commission of a serious offense. Consequently, the Board unanimously recommended a general, rather than honorable, discharge. (The Naval Military Personnel Manual § 3630600(1)(c) allows punitive discharges for offenses like those committed by St. Clair.) The commander of the submarine squadron agreed, as did the Office of the Chief of Naval Personnel. On July 6, 1992, St. Clair received a general discharge and left the Navy. To wrap up this part of St. Clair's story, we should note that in February of 1992 he attended the Navy's low-level alcohol treatment course. Afterwards, the Connecticut municipal authorities dismissed the OWI charge stemming from the September 1991 arrest.

St. Clair pursued his case by applying to the Naval Discharge Review Board ("NDRB") for recharacterization of his discharge from general to honorable. The NDRB refused to budge. St. Clair now argues that the NDRB's written decision misstated the facts of the case by suggesting that St. Clair completed the alcohol rehabilitation course before his second OWI arrest. Furthermore, St. Clair notes that the NDRB incorrectly stated that he damaged the truck's windshield 2 days after his second OWI arrest.

Hoping for vindication, St. Clair appealed the NDRB decision to federal court. St. Clair contended that the Navy improperly punished him without a court-martial, that

the Navy should have rehabilitated him instead of discharging him, and that the squadron commander improperly represented that he had been convicted of reckless driving. Judge Michael Mihm heard the case and, on October 27, 1997, granted the government's motion for summary judgment. Judge Mihm reasoned that Article 15 of the UCMJ specifically allows commanding officers to impose nonjudicial punishments on servicemembers attached to a vessel. See 10 U.S.C. § 815(a). Thus, as a member of the U.S.S. Archerfish's crew, St. Clair was not entitled to a court-martial. The judge rejected St. Clair's argument about rehabilitation after considering the Office of the Chief of Naval Operations Instruction ("OPNAVINST") 5350.4B. This instruction recommends rehabilitation for those showing "exceptional potential for further useful service, and who reject further alcohol abuse." On the other hand, the instruction also suggests discharge for "repeat offenders and those who do not respond favorably to counseling, education or rehabilitation." Importantly, however, the instruction commits the ultimate decision to the discretion of the commanding officer. In analyzing the application of this instruction, Judge Mihm unfortunately also misstated the facts. He explained that St. Clair "committed his second alcohol-related offense less than six weeks" after completing a rehabilitation program. The judge reasoned that "[f]rom this conduct, it was not an abuse of discretion for the Navy to conclude that St. Clair was not amenable to treatment and would not reject further alcohol abuse." Finally, Judge Mihm rejected St. Clair's third argument because the squadron commander presented St. Clair's reckless driving as relevant conduct, not as a formal charge.

In this appeal, St. Clair renews his claims about the propriety of the captain's mast and his entitlement to rehabilitation. He also adds a new argument. He urges us to reverse because erroneous findings of fact infected the decisions of the district court and the NDRB. We will start by turning our attention to this new contention, beginning with first principles. We review the district court's grant of summary judgment de novo. This means, in effect, that we really just

review the decision of the NDRB.[2] Our jurisdiction over that decision arises under the Administrative Procedures Act. *See* 5 U.S.C. § 706(2). As such, we examine the administrative record to determine whether the NDRB made an arbitrary or capricious decision, abused its discretion, acted contrary to law or regulation, or lacked the support of substantial evidence. *See, e.g., Chappell v. Wallace*, 462 U.S. 296, 303, 103 S.Ct. 2362, 76 L.Ed.2d 586 (1983). Considering this deferential standard, St. Clair faces a high hurdle. As we explained in *Bagdonas v. Department of Treasury*, 93 F.3d 422 (7th Cir.1996), we will " 'uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned.' " *Id.* at 426 (quoting *Bowman Transp., Inc. v. Arkansas–Best Freight Sys., Inc.*, 419 U.S. 281, 286, 95 S.Ct. 438, 42 L.Ed.2d 447 (1974)). In *Bagdonas* we also reaffirmed our commitment to satisfying ourselves that the agency examined the evidence and articulated a reasonable explanation for its action. *See id.*

St. Clair does not allege that the NDRB heard less than all the relevant evidence. The Board considered St. Clair's service record, the outcome of the captain's mast, the proceedings of the ADB, and St. Clair's arguments in support of an honorable discharge. The NDRB's decision begins with a chronological summary of the important events in St. Clair's service. Crucially, this summary shows that St. Clair was twice arrested for OWI, after which the counseling service recommended mid-level treatment. The record also shows St. Clair's nonjudicial punishment for willful damage to government property and drunken driving based on the incidents in October of 1991.

Following the service record, the NDRB offered a written explanation for its decision. In this section the NDRB explained that it considered each component of St. Clair's case

for an honorable discharge: his performance and conduct scores, his representation of the Navy as a powerlifter, his supervisory capabilities, his claim that the captain's mast represented an isolated incident, his completion of the alcohol rehabilitation course, and his good behavior since discharge. The NDRB explicitly noted that, despite all the "positive aspects" of St. Clair's service, he deserved only a general discharge. The NDRB also explained that St. Clair's postservice conduct did not merit an upgrade. As the Board stated, "There was insufficient documentation, at this time, that the applicant had overcome his alcohol problems and was established as a contributing member of his community."

In rejecting St. Clair's application, the NDRB explained the case against St. Clair. The NDRB noted St. Clair's "pattern of adverse behavior." As St. Clair argues, however, the board's description of this pattern leaves something to be desired. The NDRB stated:

> The Board further noted that the applicant had established a pattern of adverse behavior due to alcohol abuse, first with a civil arrest for DUI for which charges were dropped after completion of the NADSAP course, then a second DUI offense on base, followed in two days by the damaging of Government property.

Perhaps, as St. Clair contends, the Board misperceived the placement of the treatment course in the sequence of events. One could certainly read the sentence to state that St. Clair was arrested, then received treatment, and then was arrested again. But, equally plausibly, one could understand the sentence to convey only that St. Clair was arrested twice, but that the civil authorities eventually dropped the charges stemming from the first arrest. The sentence does not unequivocally

---

2. The government urges us to apply waiver analysis because St. Clair failed to argue the factual errors in the NDRB's decision to the district court below. *See Yorger v. Pittsburgh*, 733 F.2d 1215, 1220 (7th Cir.1984). We reject this argument. The alleged factual error concerning the timing of St. Clair's treatment appeared in the district court's decision and that error permeated the district court's reasoning. While we review the district court's decision *de novo*, it is still the district court's decision we are reviewing. Thus,

St. Clair may bring the matter to our attention. We also reject the government's claim that St. Clair forfeited the issue by failing to dispute the government's statement of facts supporting summary judgment. *See Waldridge v. American Hoechst Corp.*, 24 F.3d 918, 921–22 (7th Cir. 1994). We do not hold St. Clair responsible for failing to dispute this point because the government's statement of facts did not explicitly contain the errors in question.

state that St. Clair's second arrest occurred after the NADSAP course. If we treat the phrase about the treatment course as additional information about the first arrest rather than additional information about the pattern of conduct, then the sentence comports with St. Clair's version of events: "first with a civil arrest for DUI [details about that arrest], then a second DUI offense on base." Thus, the only absolutely clear meaning of the critical passage is that the second OWI offense took place after the civil arrest.

The government's position is not so weak, however, that we need to resolve this case by resorting to tenuous semantics. The NDRB did not stop writing after the problematical sentence. Its reasoning in the remainder of the decision makes clear that it did not consider the timing of St. Clair's treatment to be important. The NDRB explained:

> The Board does not recognize these actions to be "minor" offenses, especially when considering the serious consequences and possibilities of death and injury related to drunken driving. Further, alcohol abuse is not, in itself, an offense which constitutes grounds for punishment; however, members who commit offenses while drinking are still responsible for their actions. They must accept the consequences for any misconduct or misbehavior, whether committed before or after they receive rehabilitation treatment.

In other words, the NDRB based its decision on St. Clair's dangerous conduct while intoxicated, not on the timing of that conduct or on his amenability to treatment. This second passage also clarifies the weight of any misimpression regarding the timing of St. Clair's outburst in the truck. (While the government does not contest St. Clair's averment that he broke the windshield within an hour after the second arrest, the government does note the absence of clear evidence in the record.) The NDRB focused its decision on the safety risks of St. Clair's conduct while intoxicated, not on his ability to control his temper. Those risks escalated, as Judge Mihm correctly noted. Regardless of whether St. Clair received treatment before his second arrest, his conduct worsened. His first arrest concerned only driving under the influence. His second arrest concerned the uncharged conduct of running a stop sign,

speeding, and evading arrest. Finally, the NDRB's decision is even more cogent if St. Clair damaged the truck shortly after his second arrest rather than 2 days later. St. Clair's inability to control his impulses while intoxicated underscores the NDRB's emphasis on offenses committed under the influence. If St. Clair broke the windshield 2 days later, one might suspect a problem unrelated to alcohol. But if he broke the windshield one hour later, one would suspect an alcohol problem that not only impaired his decisionmaking but also exacerbated his aggressiveness.

■ In conclusion, we do not believe that the NDRB relied upon erroneous facts in reaching its decision. Yes, the written decision appears to contain factual errors, but the NDRB's reasoning (unlike the district court's reasoning) did not hinge on those mistakes. In other words, this is the quintessential case in which an administrative decision lacks ideal clarity but still contains clear reasoning. The NDRB decision rested upon fact-findings that St. Clair does not contest—his civil OWI arrest and his military offenses of drunk driving and damaging government property. The NDRB articulated a rational connection between these facts and the decision to uphold St. Clair's general discharge.

■ Moving on to St. Clair's contention that he deserved a court-martial rather than a captain's mast. Both the government and St. Clair agree that under Article 15 of the UCMJ a servicemember attached to a vessel does not have the right to demand a court-martial. *See* 10 U.S.C. § 815(a) ("except in the case of a member attached to or embarked in a vessel, punishment may not be imposed upon any member of the armed forces under this article if the member has, before the imposition of such punishment, demanded trial by court-martial in lieu of such punishment"); *see also Cappella v. United States*, 224 Ct.Cl. 162, 624 F.2d 976, 977 (1980). St. Clair argues that, since his commanding officer restricted him to barracks after the second OWI arrest, he could no longer be considered attached to the U.S.S. Archerfish when the commander ordered a captain's mast on November 8, 1991.

According to Navy records, however, the service assigned St. Clair to the U.S.S. Archerfish on November 2, 1990, and the Navy did not reassign him until January 24, 1992, when it placed him on temporary duty. Therefore, we see no basis for St. Clair's claim that his restriction to barracks altered his attachment to the U.S.S. Archerfish.

We note that a district court resolved a similar question in *Bennett v. Tarquin*, 466 F.Supp. 257, 259–60 (D.Haw.1979). There the court explained that even though nuclear submarine crew members were ashore and not embarked on a vessel, they were still attached to the ship as alternate crew members and thus subject to a captain's mast. The logic of this case follows that of *Bennett*. We do not believe that Article 15 leaves a servicemember assigned to a vessel any basis to claim a right to a court-martial.

St. Clair's third issue is a virtual nonstarter. He relies upon an instruction issued by the Chief of Naval Operations as the basis for claiming a right to rehabilitation superseding the Navy's authority to discharge him. The instruction in question, OPNAVINST 5350.4B, is no more than a guideline. One of the attachments to the instruction provides a decisionmaking tree for commanding officers. This flowchart directs commanders to assess the suitability for continued duty of any servicemember suffering from an alcohol problem. Most importantly, the chart specifically directs a commander to initiate separation proceedings under MIL-PERSMAN Chapter 36 for any servicemember deemed unsuitable for further duty. In sum, far from defying the applicable instruction, St. Clair's commander appears to have followed its advice and to have exercised the authority granted him by applicable regulations.

For the foregoing reasons, we AFFIRM the district court's grant of summary judgment in favor of the Secretary of the Navy.