**William A. LOVELY, III, Treasurer, and Committee to Elect Bill Sinnott, Plaintiffs,**

v.

**FEDERAL ELECTION COMMISSION, Defendant.**

No. CIV.A.02–12496–PBS.

United States District Court, D. Massachusetts.

March 9, 2004.

---

Richard B. Bader, David B. Kolker, Lawrence H. Norton, Federal Election Commission, Office of the General Counsel, Washington, DC, for Federal Election Commission, Defendant.

William F. Sinnott, Sinnott Law Office, Boston, MA, for Committee to Elect Bill Sinnott, William A. Lovely, III, Plaintiffs.

## MEMORANDUM AND ORDER

SARIS, District Judge.

### I. INTRODUCTION

Plaintiffs William A. Lovely, III and Committee to Elect Bill Sinnott appeal

from a decision of the Federal Election Commission ("FEC") imposing a fine of $1,800 due to a tardy electronic filing of a report required by the Federal Election Campaign Act, 2 U.S.C.A. §§ 431–437 (West 1999 & Supp.2003) ("FECA"). Plaintiffs argue that the report was timely filed on paper and by diskette, albeit in an incorrect electronic format, and that the FEC imposed the fine in violation of the best efforts provision, 2 U.S.C. § 432(i). Both parties have moved for summary judgment.

After review of the briefs and hearing, the Plaintiffs' motion for summary judgment is **DENIED** and the Defendant's motion for summary judgment is **DENIED.** The case is vacated and remanded to the FEC for further proceedings in accordance with this Order.

## II. BACKGROUND

### A. Factual Background

The administrative record contained evidence of the following facts.

In 2001, Bill Sinnott unsuccessfully campaigned for Congress. William A. Lovely, III was the treasurer of the Committee to Elect Bill Sinnott, a political committee within the meaning of 2 U.S.C. § 431(4). It is a self-described grassroots, all-volunteer organization with scant personnel or monetary resources.

Mandatory electronic filing of reports began in January, 2001. On December 28, 2001, the FEC sent a notice reminding campaign committees that the 2001 Year End Report would be due on January 31, 2002, as required by 2 U.S.C. § 434(a)(2)(B)(ii), and cautioning committees that fines would be assessed for late or inaccurate reports. The notice included a four-page handout titled "Electronic Filing" that described the mandatory procedures for filing reports electronically. It specified that reports could be filed either via the internet or by mailing a diskette

accompanied by a certification, and also noted that reports had to follow the FEC's Electronic Filing Specification Requirements, which were available online or on paper. The notice stated that "[a]n electronic report is considered 'filed' when it is received and validated by the Commission's computer system on or before 11:59 p.m. on the prescribed filing date. Incomplete or inaccurate reports that do not pass the FEC's validation program will not be considered filed." (AR0004.)

Lovely called the FEC several times during January to inquire about the filing requirements and the consequences of not filing electronically. On January 29, 2002, the Electronic Filing Office received and processed a request from Lovely for a password so that he would be able to file the Year End Report electronically.

On January 31, 2002, the Year End Report filing deadline, Lovely experienced difficulty when trying to file his report via the Internet, receiving a message stating that there was a "winsock" error. He called the FEC's Technical Support Center but kept being referred to voicemail, and then tried calling several other persons at the FEC. He called Adam Regan and Patricia Sheppard of the FEC's Reports Analysis Division. Regan gave him instructions on uploading the report to diskette, and advised him to send a paper copy as well. Sheppard told him that the Technical Support Center was backed up with calls but was trying to return all messages that day, and that the paper copy would not be acceptable to the FEC. She suggested that he save the report to diskette and send it in. Lovely, using the steps suggested by Regan for uploading the report to diskette, attempted to upload the information to the disk but the computer cited errors that prevented this. (AR0051.) Instead, he sent a paper copy and a diskette via registered mail later

that day, with a signed summary page. The report was accurate and complete.

After a delay due to security precautions at the FEC mail room, the diskette arrived on February 13. The FEC rejected the diskette, as it was incorrectly formatted, but posted the paper copy on the FEC's website. Eliza Green of the Technical Support Center left a message for Lovely telling him of the problems. On February 14, Lovely spoke with the Technical Support Center, which told him that the diskette was incorrectly formatted and the report would have to be uploaded or a new diskette sent. Lovely told them he would call back five days later, on February 19, to obtain assistance. On February 15, the FEC sent Lovely a notice that the Committee "may have failed to file" its Year End Report.

Lovely contacted the FEC on February 25, and Green walked Lovely through the steps necessary to save the report to disk—according to Lovely, "the very same steps that Mr. Regan [had] provided on January 31." (AR0051.) Lovely sent the report again on February 26, and then phoned the FEC to reiterate that he had attempted to file the report electronically but had been unable to do so. Lovely explained that he had been busy the past week, and so had not called earlier. On February 27, twenty-seven days after the filing deadline, the FEC received the properly-formatted diskette, which passed the FEC's validation program.

### B. Procedural History

On June 14, 2002, a six-person panel at the FEC voted unanimously to find reason to believe ("RTB") that the Committee and Lovely violated 2 U.S.C. § 434(a), and to make a preliminary determination that a civil money penalty of $3100 would be assessed. This fine was based on the number of days the report was late (27) and the number of prior violations (0). On

July 23, 2002, Lovely submitted an affidavit challenging the RTB finding.

On November 2, 2002, the FEC's Office of Administrative Review submitted its reviewing officer's recommendation to the FEC, a copy of which was sent to the Committee on November 6. The recommendation summarized the facts at issue, Lovely's submission, and the regulations, and then stated that since Lovely had not raised any of the three defenses permitted by 11 C.F.R. § 111.35(b), the Officer recommended that a fine of $3100 be imposed for the 27 days the filing was late. On November 18, Lovely submitted a letter objecting to the recommendation.

The FEC voted unanimously on November 25, 2002, to make a final determination that the Committee and Lovely had violated 2 U.S.C. § 434(a). The FEC also voted to decrease the civil penalty from $3100 to $1800, "based on the filing, which was postmarked on the filing date, being fourteen days late, after accounting for the irradiation process which resulted in mail delays." (AR0092.) A certification of this vote appears in the administrative record, but the administrative record does not contain an opinion or other statements of reasons by the Commission. There was no oral hearing.

## III. JUDICIAL REVIEW STANDARD FOR AGENCY ACTIONS

Section 437g(a)(4)(C)(iii) of the Federal Election Campaigns Act states: "Any person against whom an adverse determination is made under this subparagraph may obtain a review of such determination in the district court of the United States for the district in which the person resides by filing in such court ... a written petition requesting that the determination be modified or set aside."

The parties agree that the correct judicial review standard is governed by the

Administrative Procedure Act ("APA"), 5 U.S.C.A. § 706 (West 1999 & Supp.2003).[1] Under section 706(2)(A), the Court must set aside agency action if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *Greenwood for Congress, Inc. v. Fed. Election Comm'n,* 2003 WL 22096125, *5 (E.D.Pa. Aug.15, 2003) (holding that FEC's decision rejecting the disk used for filing an electronic report was arbitrary and capricious); *cf. Becker v. FEC,* 230 F.3d 381, 384 (1st Cir.2000) (applying section 706 of the APA in reviewing facial challenge to FEC regulation). Agency hearing determinations are upheld when supported by "substantial evidence." § 706(2)(E). *See Sistema Universitario Ana G. Mendez v. Riley,* 234 F.3d 772, 777 (1st Cir.2000).

▬ , Under the APA, "all decisions" shall include a statement of "findings and conclusions, and the reasons or basis therefore on all the material issues of fact, law, or discretion presented on the record," as well as the appropriate sanction. 5 U.S.C. § 557(c)(A). The Court must assure itself that the agency "examine[d] the relevant data and articulate[d] a satisfactory explanation for its action, including a 'rational connection between the facts found and the choice made.'" *Bagdonas v. Dep't. of Treasury,* 93 F.3d 422, 426 (7th Cir.1996). An agency may not simply state, by an ipse dixit, that the agency does not believe that the statutory criteria have been met. This is because a court "cannot fulfill its statutory duty to review the agency's determination if the agency does not state, in even the most truncated fashion, the basis for its decision." *Id.* at 426.

> [The] basis [for an administrative action] must be set forth with such clarity as to be understandable. It will not do for a court to be compelled to guess at the theory underlying the agency's action; nor can a court be expected to chisel that which must be precise from what the agency has left vague and indecisive. In other words, we must know what a decision means before the duty becomes ours to say whether it is right or wrong.

*Harrington v. Chao,* 280 F.3d 50, 60 (1st Cir.2002).

▬ "[A]lthough the court is to 'uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned,' *Bowman Transp., Inc. v. Arkansas–Best Freight Sys., Inc.,* 419 U.S. 281, 286, 95 S.Ct. 438, 442, 42 L.Ed.2d 447 (1974), it may not supply a reasoned basis for the agency's action that the agency itself has not given." *Bagdonas,* 93 F.3d at 426 (quoting *SEC v. Chenery Corp.,* 332 U.S. 194, 196, 67 S.Ct. 1575, 1577, 91 L.Ed. 1995 (1947)). "The statement of reasons need not include detailed findings of fact but must inform the court and the petitioner of the grounds of decision and the essential facts upon which the administrative decision was based." *Id.* (quoting *Kitch-*

---

1. Section 706 provides:

   To the extent necessary to decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. The reviewing court shall—

   . . . .

   (2) hold unlawful and set aside agency action, findings, and conclusions found to be—

   (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; [or]

   . . . .

   (E) Unsupported by substantial evidence in a case subject to sections 556 and 557 of this title or otherwise reviewed on the record of an agency hearing provided by statute . . . .

*ens v. Department of the Treasury,* 535 F.2d 1197, 1200 (9th Cir.1976)).

## IV.  DISCUSSION

The FEC argues that the "best efforts" statutory provision does not apply to the administrative fines program, but only applies to a committee's failure to report substantive information. The FEC argued, "[T]he Commission has long interpreted the best efforts provision as creating a limited safe harbor regarding committees' obligations to report substantive information that may be beyond their ability to obtain." (FEC Supp. Brief at 1.)

### A.  Best Efforts

The "best efforts" statute, 2 U.S.C. § 432(i), was described by its congressional sponsor as the "anti-nit-picking amendment." *See Republican Nat'l Comm. v. Fed. Election Comm.,* 76 F.3d 400, 405 (D.C.Cir.1996) (quoting statement of Sen. Packwood, 122 Cong. Rec. 7922–23 (1976)). It provides: "When the treasurer of a political committee shows that best efforts have been used to obtain, maintain, *and submit* the information required by this Act for the political committee, any report or any records of such committee shall be considered in compliance with this Act or chapter 95 or chapter 96 of Title 26." 2 U.S.C.A. § 432(i) (West 1997) (emphasis added). The FEC includes substantially identical language in its regulations. *See* 11 C.F.R. §§ 104.7, 102.9(d) (West 2003).

In 1979, Congress amended the best efforts statute along with other parts of FECA. Among other changes, the "best efforts" provision was made applicable to the entirety of FECA, rather than merely to one subsection (which in 1976 was titled "Contents of reports"). The legislative history of these changes notes:

> *(i) Best Efforts.* The best efforts test is specifically made applicable to recordkeeping and reporting requirements in both Title 2 and Title 26. The test of whether a committee has complied with the statutory requirements is whether its treasurer has exercised his or her best efforts to obtain, maintain, *and submit* the information required by the Act. If the treasurer has exercised his or her best efforts, the committee is in compliance. Accordingly, the application of the best efforts test is central to the enforcement of the recordkeeping and reporting provisions of the Act. It is the opinion of the Committee that the Commission has not adequately incorporated the best efforts test into its administration procedures, such as the systematic review of reports.

H.R.Rep. No. 96–422, at 14 (1979), U.S.Code Cong. & Admin.News 1979, 2860, 2873 (emphasis added).

While the FEC cites this legislative history as support for the proposition that the "best efforts" provision applies only to reporting donor information, in fact, the legislative history states that the reporting of donor information is "[o]ne illustration of the application of this test." *Id.*

### B.  Administrative Fines Program

The administrative fines program was established by Congress in 1999, and "creates a simplified procedure for the FEC to administratively handle reporting violations." H.R.Rep. No. 106–295, at 11 (1999). The administrative fines provision applies to violations of 2 U.S.C. § 434(a), the section dealing with filing reports. 2 U.S.C. § 437g(a)(4). Effective January 1, 2001, reports filed on paper do not satisfy a political committee's filing obligations when it has "aggregate contributions or expenditures" in excess of the threshold amount of $50,000. 2 U.S.C. § 434(a)(11); 11 C.F.R. § 104.18(a)(2). The FEC must make the reports available on the Internet within 24 hours after they are received by

the Commission. 2 U.S.C. § 434(a)(11). A committee may file a report either by direct transmission to the Commission via an Internet connection or modem or by mail in a separate file on a diskette accompanied by a signed certification. 11 C.F.R. § 104.18(g).

The FEC implemented the administrative fines provisions at 11 C.F.R. Part 111 B, 111.30–45 (2003). These regulations, effective July 14, 2000, provide that challenges to civil fines may be based on only three reasons: "(i) the existence of factual errors; and/or (ii) the improper calculation of the civil monetary penalty; and/or (iii) the existence of extraordinary circumstances that were beyond the control of the respondent and that were for a duration of at least 48 hours and that prevented the respondent from filing the report in a timely manner." 11 C.F.R. § 111.35(b)(1). The regulations also provide a list of factors that will not be considered "extraordinary circumstances," including "(iv) computer failures (except failures of the Commission's computers); and other similar circumstances." 11 C.F.R. § 111.35(b)(4). The FEC stated in its general comments on its regulations that while it noted "strong disagree[ment]" with its proposed list, it would not consider other factors, such as good faith, for "violations of the reporting requirements of 2 U.S.C. 434(a) are strict liability offenses." Administrative Fines, 65 Fed.Reg. 31,787, at 31,789–90 (May 19, 2000). It did not address the "best efforts" provision in the comments.

## C. Chevron Analysis

■ The parties' dispute centers around whether the "best efforts" statutory provision applies to the administrative fines program. Using traditional tools of statutory construction, the courts first examine whether the statute directly speaks "to the precise question at issue." *Chevron U.S.A., Inc. v. Natural Resources Defense*

*Council,* 467 U.S. 837, 842 n. 9, 104 S.Ct. 2778, 2781 n. 9, 81 L.Ed.2d 694 (1984). If so, the court follows the statute's instructions; if not, the courts defer to the agency's interpretation if it is reasonable. *Id.* at 843, 104 S.Ct. at 2782.

The FEC in its briefing claims that it limits the reach of the best efforts statute to best efforts to "obtain" contributor information. *See, e.g., Republican Nat'l Comm.,* 76 F.3d at 404 (holding that the phrase "best efforts" is "inherently general and open-ended and well-suited for administrative refinement"). Here, the FEC's argument that the phrase does not apply to the submission of reports conflicts with the plain statutory language. While the Commission can refine by regulation what best efforts means in the context of submitting a report, it cannot define it away by providing that submission of reports is governed by a "strict liability" standard.

■ This "best efforts" issue was raised and preserved in the administrative record by Plaintiffs as a defense to the charge of non-compliance. (*See, e.g.,* Aff. of Lovely at AR0053, ¶ 21 ("The FEC handbook for Treasurers states in several places the phrase 'treasurer's best effort.' The Treasurer ... has made his 'best effort' to comply as evidenced by ....").)

The Reviewing Officer made two inconsistent holdings on the best efforts assertion. Initially, he recognized the "best efforts" defense. (*See* Recommendation at AR0047–48 ("When the treasurer of a political committee shows that best efforts have been used to obtain, maintain and submit the information required by the Act, any report or reports shall be considered in compliance with the Act. 2 U.S.C. § 432(i) and 11 C.F.R. §§ 102.9(d) and 104.7(a) ....").) Later, the officer rejected the Treasurer's use of his "best efforts" because it did "not fall within the list of defenses outlined in 11 C.F.R.

§ 111.35(b)." (*See* Reviewing Officer Recommendation of November 1, 2002, at AR0048.) According to the reviewing officer, challenges must state the existence of "extraordinary circumstances that were beyond the control of the respondents," which do not include "computer failures and other similar circumstances." (*Id.*) The reviewing officer's uncertainty on the applicability of a best efforts defense is understandable in light of the regulatory intent to impose virtual strict liability for failure to file electronically with a limited range of exceptions like natural disasters and the FEC's own computer failure.

In its final determination, the FEC did not made findings of fact, make a statement of reasons, incorporate the reviewing officer's recommendation by reference, or issue any opinion at all. The administrative record contains multiple submissions from the reviewing officer in charge of Plaintiffs' case and Plaintiffs' replies to those recommendations, but it does not contain a rationale for the final decision of the Commission. The form appearing to be the final decision contains only a record that the Commission voted 6–0 to impose the civil penalty and send an appropriate letter. While adoption of a reviewing officer's recommendation may suffice in some circumstances, it is not clear here how the Commission evaluated Plaintiffs' "best efforts" arguments, or whether it applied the correct legal standard. Moreover, factually, even under the narrow regulatory exceptions, there were no fact-findings by either the Reviewing Officer or the Commission on key points, such as the alleged unavailability of the FEC Help Desk, or whether the formatting error on the diskette occurred despite the treasurer's best efforts to follow staff's advice or due to his own negligence, incompetence, or last-minute compliance efforts. Moreover, the FEC counsel argues that even if best efforts were made on January 31, the Treasurer was tardy in reformatting the disk once he knew it failed the validity program on February 13.

This lack of clarity in the administrative decisions and possible error of law compel a reversal and remand. Remand "is the appropriate remedy when a reviewing court cannot sustain the agency's decision because it has failed to offer legally sufficient reasons for its decision." *Gailius v. INS*, 147 F.3d 34, 47 (1st Cir. 1998). Additionally, "vacation is a proper remedy when an agency fails to explain its reasoning adequately." *Harrington*, 280 F.3d at 60 (citing cases and journal article dealing with both rulemaking and adjudication processes).

### ORDER

The Plaintiffs' motion for summary judgment is **DENIED** and the Defendant's motion for summary judgment is **DENIED**. The case is vacated and remanded to the FEC for further proceedings in accordance with this Order.