In the

# United States Court of Appeals
## For the Seventh Circuit

No. 05-1873

ROBERT G. SMITH,

*Plaintiff-Appellant,*

*v.*

FRANCIS J. HARVEY, Secretary
of the Army, and THE ARMY BOARD FOR
CORRECTION OF MILITARY RECORDS,

*Defendants-Appellees.*

Appeal from the United States District Court
for the Western District of Wisconsin.
No. 03-C-200-S—**John C. Shabaz**, *Judge.*

ARGUED NOVEMBER 30, 2005—DECIDED AUGUST 15, 2006

Before ROVNER, WOOD, and EVANS, *Circuit Judges.*

WOOD, *Circuit Judge.* Dr. Robert Smith, a retired ophthalmologist who formerly served in the U.S. Army's Medical Service Corps, believes that he is entitled to constructive service credit for a long-ago completed master's degree. The Army Board for Correction of Medical Records (ABCMR), to which the Secretary of the Army has delegated the responsibility to decide such claims, disagreed and denied his request. The district court granted summary judgment for the Secretary, concluding that the denial of credit to Smith was neither arbitrary nor capricious. We affirm.

**I**

Like many others during the period of the Vietnam War, Smith was commissioned through the Reserve Officer Training Corps and accepted a U.S. Army Reserve (USAR) appointment in the Medical Service Corps—in his case, in 1972. That same year he received an educational deferment and entered graduate school, where he pursued a master's degree in anatomy. In 1974, before completing this degree, Smith entered medical school. In 1976, he earned his master's degree, and in 1978, he received his medical degree.

Smith accepted a USAR active duty appointment to the Medical Service Corps in 1978. He was awarded four years' constructive credit for the time spent earning his medical degree and, as a result, was awarded the rank of captain. Thereafter, Smith was promoted to major in 1984 and to lieutenant colonel in 1990. Although he was considered several times for the rank of colonel, this promotion never came his way. Smith retired from the military in 1999.

In 1992, Smith petitioned the Department of the Army for constructive service credit for the time he spent working on his master's degree before entering medical school. He was awarded slightly more than two years' credit and, as a result, was considered for retroactive promotion to major by a special promotion selection board. In the end, however, the board declined to promote him.

In 1996, Smith appealed the denial of his retroactive promotion to the ABCMR, contending that the dates of his promotion to captain, major, and lieutenant colonel all should have been adjusted and that he should have been retroactively promoted to colonel as well. The following year, the ABCMR not only declined to promote Smith retroactively; it also ruled that the Department of the Army had erred by granting Smith any additional service credit for the time spent earning his master's degree. In 1999,

Smith unsuccessfully sought reconsideration of this decision. He then filed this suit in federal court. The district court granted summary judgment to the Secretary and the Board (which are functionally the same party— Smith neither gains nor loses anything by naming the Board separately), concluding that Smith had "provided no evidence of any directive or portion thereof that would authorize the award of constructive service credit for his master's degree." Smith appeals.

## II

The Secretary of a military department, "acting through boards of civilians of the executive part of that military department" such as the ABCMR, may adjust military records "when the Secretary considers it necessary to correct an error or remove an injustice." 10 U.S.C. § 1552(a)(1). The decisions of such boards "are subject to judicial review and can be set aside if they are arbitrary, capricious or not based on substantial evidence." *Chappell v. Wallace*, 462 U.S. 296, 303 (1983); *St. Clair v. Secretary of Navy*, 155 F.3d 848, 851 (7th Cir. 1998).

In its original decision denying Smith service credit, the ABCMR concluded that at the time Smith was appointed to the Medical Corps "[t]here was no provision under then existing policy for awarding constructive credit for a master's degree in anatomy." In reaching this conclusion, the Board relied on a 1970 version of Department of Defense Directive (DODD) 1320.7, "Temporary Grades and Authorized Strengths in Grade of Medical and Dental Corps Officers." In his motion for reconsideration, Smith pointed out that the 1970 version of DODD 1320.7 had been superceded by a 1976 version, "Temporary Grades, Promotion Policies and Authorized Strengths in Grade for Medical and Dental Officers," and that this latter version was in effect at the time he was appointed to active duty in the

Medical Corps. Smith also presented evidence to the ABCMR that a member of the Medical Service Corps, Dr. Lee Hunter, was awarded constructive service credit under the 1976 version of DODD 1320.7 for a master's degree in medical engineering that he earned prior to his medical degree.

In response to Smith's motion, the ABCMR acknowledged its erroneous reliance on the 1970 version of DODD 1320.7, but did not change its bottom line. It explained that both the 1970 and 1976 directives "require the award of a doctorate or comparable degree in a health discipline, beyond a medical degree, for award of additional service credit." The Board also stated that "[t]he provision of [the] 1976 directive which granted additional credit for completion of a graduate level program required that it be an approved program earned subsequent to [,] not, as in the applicant's case, concurrently with the medical degree. . . ." (Emphasis in original).

Both parties agree that it is the 1976 version of DODD 1320.7 that is relevant to this case. This directive explains that "[t]he primary purpose of Constructive Service Credit is to improve the career progression comparability of those individuals who begin active duty service after obtaining the additional education, training and experience required for appointments as Medical and Dental Officers with those individuals who begin active duty commissioned service immediately after obtaining baccalaureate degrees." In order to accomplish this purpose, the directive contains a table for computing constructive service credit. Two provisions of this table are of particular relevance to Smith's claim. The first allows for one year of service credit for each school year for:

> Successful completion of approved graduate or post-graduate education, subsequent to graduation from dental school, in the field of dentistry or the specialty to which appointed. . . .

DODD 1320.7 (1976), Pt. IV(A), ¶ 4(d)(3). The other relevant provision states that one to three years service credit may be granted for:

> Unusual qualifications not otherwise credited, as determined by the Military Department Secretary including, but not limited to, possession of a doctorate or comparable degree in a second health discipline.

DODD 1320.7 (1976), Pt. IV(A), ¶ 4(d)(5).

Smith first argues that the ABCMR applied a mistaken standard in evaluating whether his master's degree in anatomy qualified as an "unusual qualification" under ¶ 4(d)(5), treating the phrase "a doctorate or comparable degree" as an exclusive list of unusual qualifications rather than as illustrative examples. Next, Smith contends that the ABCMR erroneously interpreted ¶ 4(d)(3) as limiting the award of constructive service credit to education completed subsequent to a medical degree. Although Smith agrees with the ABCMR that ¶ 4(d)(3) applies generally to both dentists and medical doctors, in his view that provision's limit on the award of constructive service credit applies literally only to "education [ ] subsequent to graduation from dental school." In other words, Smith contends that since he did not attend dental school, ¶ 4(d)(3)'s limitation should not apply to him and that the sequence of degrees is actually an impermissible consideration for the Board in his case. The Board, in contrast, cited the fact that Smith's master's degree was awarded during the course of his medical education as a reason for denying his petition.

The Secretary responds that Smith waived the argument based on ¶ 4(d)(5) because he did not raise it below and that he previously conceded that ¶ 4(d)(3) did not apply to medical school graduates. Upon careful review of the record, we find neither argument persuasive. Although "[w]e have long refused to consider arguments that were not

presented to the district court in response to summary judgment motions," *Republic Tobacco Co. v. North Atlantic Trading Co., Inc.*, 381 F.3d 717, 728 (7th Cir. 2004) (quotation marks omitted), it is simply not the case that Smith failed to present his ¶ 4(d)(5) argument to the district court. In his response to the Secretary's motion for summary judgment, Smith argued that the ABCMR "failed to give effect to the plain and unambiguous provisions of the applicable Department of Defense Directive governing the award of entry grade credit for education or experience." Considering that the only provisions of DODD 1320.7 addressed by the ABCMR in its decision were ¶¶ 4(d)(3) and (5), that was enough. Nor did Smith concede that ¶ 4(d)(3) was irrelevant to his petition. Instead, the record reveals that Smith properly made the same argument below as he does here: that ¶ 4(d)(3) "limits Constructive Service Credit subsequent to graduation from dental school, *not to other graduate-level professional studies*." (Emphasis added).

Waivers and concessions aside, the ABCMR nevertheless did not act arbitrarily and capriciously in concluding that Smith did not qualify for constructive service credit. Although the ABCMR's decision may not be a model of clarity, we do not agree with Smith that the Board meant to say that only doctorates and comparable degrees count as "unusual qualifications" under ¶ 4(d)(5). Rather, the ABCMR emphasized that Smith's master's degree in anatomy did not amount to an unusual qualification because it was not a qualification "beyond a medical degree." That is, the Board interpreted the phrase "unusual qualification" to refer only to degrees in disciplines other than the primary discipline in which the officer is already qualified. Since training in anatomy is a universal prerequisite for a medical degree, the ABCMR quite reasonably concluded that such a degree does not qualify as a degree in a second health discipline. Through ¶ 4(d)(5), the Secretary (and his designates in the ABCMR) is vested with discretion

to determine what constitutes an unusual qualification deserving of constructive service credit. We see nothing here to indicate that he abused that discretion in Smith's case.

It is difficult to evaluate Smith's further claim that the ABCMR acted arbitrarily and capriciously by denying his claim for constructive service credit, in light of the fact that it had extended such credit to another Medical Service Corps member, Dr. Hunter, because the evidence Smith presented to the Board regarding Hunter's qualifications is not in the record. We are satisfied, however, taking Smith's factual representations at face value, that the ABCMR's action with respect to Hunter does not undermine its decision in Smith's case. Unlike Smith, whose master's degree was in anatomy, Hunter allegedly completed a degree in medical engineering. It would have been well within the ABCMR's discretion to conclude that a degree in medical engineering qualified as an "unusual qualification," while a degree in anatomy did not.

Nor does the ABCMR's treatment of ¶ 4(d)(3) support reversal. The relevant language—which limits constructive credit to "education [ ] subsequent to graduation from dental school, in the field of dentistry or the specialty to which appointed"—is ambiguous. The parties suggest at least three possible interpretations: (1) the "subsequent to graduation" limitation applied only to dental school graduates, such that medical graduates could receive credit for education undertaken prior to finishing medical school (Smith's position); (2) the limitation applied to dental and medical school graduates alike, such that graduates of any stripe could only receive credit for education undertaken after graduation (the ABCMR's interpretation); or (3) neither the substance of ¶ 4(d)(3) nor its "subsequent to graduation" limitation applied to medical school graduates at all, but only to dental school graduates (thus leaving only silence here, not a negative command, which is the Secre-

tary's litigation position). Where a regulatory provision is ambiguous, "an agency's considered interpretation . . . is entitled to deference." *Old Ben Coal Co. v. Director, Office of Workers' Compensation Programs*, 292 F.3d 533, 542 n.8 (7th Cir. 2002). That said, it is also true that we will not substitute "appellate counsel's *post hoc* rationalizations for agency action" for the rationale of the agency. *Slusher v. NLRB*, 432 F.3d 715, 729 (7th Cir. 2005) (quoting *Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156, 168-69 (1962)).

Whatever the degree of deference the Board's interpretation deserves, we find its reading of ¶ 4(d)(3) reasonable. If, as the first part of the second clause suggests, it addresses only dental school graduates, this means that the Board must look to the rest of the regulation (including ¶ 4(d)(5)) for graduates of other kinds of programs, such as medical school. Moreover, the inclusion of the phrase "or the specialty to which appointed" later in the same clause of ¶ 4(d)(3) indicates at a minimum that it was not intended to *preclude* a rule limiting credit to programs "subsequent to graduation" for medical doctors as well as dentists. Although the ABCMR's interpretation is certainly not the only reasonable reading of ¶ 4(d)(3), it is one such reasonable interpretation. The Board's decision is therefore not arbitrary or capricious.

We AFFIRM the judgment of the district court.

A true Copy:

Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*

USCA-02-C-0072—8-15-06