United States Court of Appeals,

Fifth Circuit.

No. 94-20822.

HARRIS COUNTY HOSPITAL DISTRICT, Plaintiff-Appellee,

v.

Donna E. SHALALA, Secretary of Health, and Human Services, Defendant-Appellant.

Sept. 19, 1995.

Appeal from the United States District Court for the Southern District of Texas.

Before WISDOM, DUHÉ, and BARKSDALE, Circuit Judges.

WISDOM, Circuit Judge:

The defendant/appellant, the Department of Health and Human Services, seeks review of the district court's decision that its disallowance of the Harris County Hospital District's bad debt claim is contrary to the law. We AFFIRM the decision of the district court.

I.

Harris County Hospital District (Hospital), plaintiff/appellee, supplies Medicare services to patients in the Houston area and is, therefore, a provider under the Medicare Act. As a provider, the Hospital is entitled to reimbursement for certain expenses from the Department of Health and Human Services (HHS). Blue Cross/Blue Shield of Texas (BCBS) acts as an intermediary between the Hospital and the HHS and audits the Hospital's requests for reimbursements.

In 1989, BCBS disallowed the Hospital's claim for reimbursement of "bad debts," or uncollected copayments, in the

amount of $1,168,022 for the fiscal year of 1988. This disallowance was based on a determination by BCBS that the Hospital had not complied with all of the requirements of Medicare in properly verifying the indigency of patients who were not held responsible for regular Medicare copayments. Specifically, the BCBS concluded that the Hospital failed to consider assets in determining indigency as required by § 312 of the Provider Reimbursement Manual. Currently, the appellant also contends that the Hospital failed to verify patients' statements of income and failed to reevaluate patients in a timely fashion.

The Hospital appealed to the Provider Reimbursement Board (PRRB), arguing that BCBS had previously accepted its policies on establishing patient indigency and any attempt to impose a different policy would violate the Omnibus Budget Reconciliation Act of 1989 (OBRA). The PRRB reversed the decision of BCBS and held in favor of the Hospital. This decision was reversed by the Health Care Financing Administration (HCFA), which manages Medicare and, therefore, represented the final decision of the Secretary of HHS. The Hospital then sought review of the decision of the HHS in the United States District Court for the Southern District of Texas. The district court reversed the decision of the HHS and held in favor of the Hospital. The HHS currently appeals that decision.

II.

A. Standard of review

Our review of the decision of the Secretary is limited by the

Administrative Procedure Act.[1]  On review, "[t]he district court, and this court, ... may overturn the Secretary's decision only if it is arbitrary, capricious, an abuse of discretion, not in accordance with the law, or unsupported by substantial evidence on the record taken as a whole".[2]  In addition, this Court must defer to the Secretary's interpretation of Medicare legislation and its attendant regulations.  The Secretary's interpretation of Medicare regulations is given "controlling weight unless it is plainly erroneous or inconsistent with the regulation".[3]  And if, as here, a statute is involved and its meaning is unambiguous, this Court must give effect to the intent of Congress.[4]

B. The Hospital's reimbursement claim

The district court reversed the decision of the Secretary because it determined that the OBRA prohibited the Secretary's disallowance of the Hospital's reimbursement claim for bad debts. In addition, the district court concluded that the Hospital had complied with all Medicare regulations and, therefore, there was no basis upon which to disallow the Hospital's reimbursement claim. On appeal, the Secretary challenges both of these conclusions.

The Secretary argues that BCBS's disallowance of the

---

[1] 5 U.S.C. § 706 et seq.

[2] *Brackenridge Hospital v. Heckler,* 753 F.2d 1307, 1313 (5th Cir.1985) (quoting *Sun Towers, Inc. v. Schweiker,* 694 F.2d 1036 (5th Cir.1983)).

[3] *Sta-Home Home Health Agency, Inc. v. Shalala,* 34 F.3d 305, 308 (5th Cir.1994) (quoting *Thomas Jefferson University v. Shalala,* --- U.S. ----, 114 S.Ct. 2381, 129 L.Ed.2d 405 (1994)).

[4] *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 842, 104 S.Ct. 2778, 2781, 81 L.Ed.2d 694 (1984).

Hospital's reimbursement claim does not violate the OBRA. The OBRA provides, in pertinent part:

> The Secretary may not require a hospital to change its bad debt collection policy if a fiscal intermediary, in accordance with the rules in effect as of August 1, 1987, with respect to criteria for indigence determination procedures, record keeping, and determining whether to refer such a claim to an external collection agency, has accepted such policy before that date, and the Secretary may not collect from the hospital on the basis of an expectation of a change in the hospital's collection policy.

Based on this statute, the Hospital argues, and the district court agreed, that the Secretary's disallowance of the hospital's claim was "not in accordance with the law".[5]

On appeal, the Secretary argues that BCBS never formally accepted the Hospital's policy on determining indigency. Without formal acceptance, the Secretary argues, OBRA does not apply. In response, the Hospital argues that BCBS did accept its policy by reimbursing the Hospital for bad debts incurred in previous years while the current policy was in place. Specifically, the Hospital was reimbursed for $1,109,843 in bad debts for 1985 and $2,909,973 in bad debts for 1986. Each year before reimbursement, the BCBS completed a detailed audit of the reimbursable expenses filed by the Hospital. In addition, the Hospital points out that there is no method of formal acceptance provided by Medicare legislation or regulations. The Hospital insists that BCBS accepted the Hospital's policy when it agreed to reimburse bad debt expenses in previous years.

A similar argument was discussed by the United States District Court for the District of Minnesota in *Hennepin County Medical*

---

[5]Administrative Procedure Act, 5 U.S.C. § 706.

*Center v. Shalala.*[6] In *Hennepin,* a hospital sought judicial review of the Secretary's decision to disallow the hospital's reimbursement claim for bad debts. The hospital argued that the Secretary's action, in the light of the intermediary's previous acceptance of the hospital's policies on establishing indigency, violated the OBRA.[7] The *Hennepin* court held that when the intermediary audited the hospital's reimbursement claims and then repaid the hospital for unpaid copayments, the intermediary accepted the hospital's policies within the meaning of the OBRA.[8] The court stated that "[t]o suggest that the approval of bad debt policies and procedures by the Intermediary and reimbursement of costs incurred in accordance with those policies did not constitute acceptance of those policies is to reject the clear meaning of the words of the statute in favor of a more strained construction".[9]

We agree. The *Hennepin* court's conclusion is based on a fair reading of the statute. The OBRA's prohibition against forcing a change in hospital policy is triggered by the intermediary's acceptance of the hospital's existing policies before August 1, 1987. The term "acceptance" is not defined and the statute includes no specific requirements for acceptance. We hold that BCBS's previous repayment of the Hospital's claim for reimbursement of bad debts after an investigation and audit constitutes acceptance under the OBRA. Since this acceptance occurred before

---

[6]1993 WL 546591 (D.Minn.).

[7]*Id.* at *3.

[8]*Id.*

[9]*Id.*

August 1, 1987, the Secretary cannot now attempt to force the Hospital to change its policies by disallowing its claim for reimbursement. Thus, the district court correctly determined that the Secretary's action was contrary to law because it violated the OBRA. We need not address the issue of whether the Hospital complied with all Medicare regulation because violation of the OBRA provides a sufficient basis for affirming the district court's judgment in favor of the Hospital.[10]

### III.

We AFFIRM the decision of the district court because we agree that the Secretary's action violated the OBRA.

---

[10]The Secretary also argues that even if BCBS accepted the Hospital's policies, that acceptance cannot excuse violations of the applicable guidelines and regulations. That interpretation of the OBRA, however, is inconsistent with its language. The clear intent of Congress was to prevent the HHS from forcing hospital-providers to change their policies regarding indigency determinations by withholding reimbursement for bad debts.