**MT. SINAI HOSPITAL MEDICAL CENTER, Plaintiff–Appellee,**

**v.**

**Donna SHALALA, Secretary of Health and Human Services, Defendant–Appellant.**

**No. 99–1195.**

United States Court of Appeals, Seventh Circuit.

Argued Sept. 17, 1999.

Decided Oct. 26, 1999.

Larry Mason, Katten, Muchin & Zavis, Chicago, IL, Dorothy Voss Ward (argued), Kamensky & Rubinstein, Lincolnwood, IL, for plaintiff–appellee.

Kathrine S. Gruenheck (argued), Department of Justice, Civil Division, Appellate Section, Washington, DC, Kathryn Ann Kelly, Office of U.S. Attorney, Civil Division, Chicago, IL, for defendant–appellant.

Before BAUER, FLAUM, and RIPPLE, Circuit Judges.

FLAUM, Circuit Judge.

Donna Shalala, the Secretary of Health and Human Services (the "Secretary"), appeals the district court's denial of her motion for summary judgment, and its entry of summary judgment in favor of Mt. Sinai Hospital Medical Center ("Mt. Sinai"), claiming that Mt. Sinai is not entitled to reimbursement of Medicare bad debts for the 1985 and 1986 fiscal years. For the reasons set out below we agree with the Secretary, and we reverse the decision of the district court.

## I. Facts

Mt. Sinai is a nonprofit corporation which runs a teaching hospital on the west side of Chicago. The hospital participates in the Medicare program as a provider of hospital services. Mt. Sinai serves an impoverished area of the city, and as much as 82% of its revenues come from Medicare or Medicaid. The dispute in this case arose from the different procedures Mt. Sinai used to collect on outstanding Medicare and non-Medicare accounts during the 1985 and 1986 fiscal years.

Mt. Sinai's initial attempts to collect on both Medicare and non-Medicare accounts were identical during the first 120 days the debts were outstanding, and were dominated by in-house collection efforts. If those efforts were unsuccessful, Mt. Sinai employed different procedures depending on the nature of the account. Non–Medicare accounts in excess of $50 were turned over to various collection agencies for further efforts at settling the accounts. Medicare accounts, by contrast, were not submitted for outside collection efforts. Rather, Mt. Sinai submitted those claims to Medicare for reimbursement under the Medicare Act's established procedure for the creation of agreements to reimburse

providers for costs owed, but not paid, by Medicare patients. 42 U.S.C. § 1395cc.

Under the Medicare program, hospitals are to be reimbursed for all "reasonable costs" incurred in providing care to Medicare patients. 42 U.S.C. § 1395f(a). The Secretary has acknowledged that reasonable costs incurred in providing care to Medicare patients can include losses sustained when those patients fail to pay Medicare deductibles and coinsurance. In order to prevent providers from shifting the costs of uncollected Medicare debts to self-pay patients, Medicare specifically states that providers may be reimbursed for losses incurred from uncollectible deductible and coinsurance amounts:

> The failure of beneficiaries to pay the deductible and coinsurance amounts can result in the related costs of covered services being borne by other than Medicare beneficiaries. To assure that such covered service costs are not borne by others, the costs attributable to the deductible and coinsurance amounts which remain unpaid are added to the Medicare share of allowable costs.

42 C.F.R. § 413.80(d).

In order to qualify for reimbursement of Medicare bad debts, providers must show that the unpaid deductible and coinsurance amounts are allowable costs. 42 C.F.R. § 413.80(e). Specifically, providers must meet the following criteria:

> (1) The debt must be related to covered services and derived from deductible and coinsurance amounts;
>
> (2) The provider must be able to establish that *reasonable collection efforts* were made;
>
> (3) The debt [must] actually [be] uncollectible when claimed as worthless; and
>
> (4) Sound business judgment [must] establish[ ] that there [is] no likelihood of recovery at any time in the future.

*Id.* (emphasis added). The primary disagreement between the parties is whether, in light of Mt. Sinai's practice of treating Medicare and non–Medicare accounts dif-

ferently, its collection efforts in regard to Medicare bad debts can be considered "reasonable" under 42 C.F.R. § 413.80(e)(2).

Medicare first became aware of Mt. Sinai's two–tiered collection procedure for Medicare and non–Medicare accounts during an audit of the hospital's cost reports conducted by Blue Cross and Blue Shield of Illinois ("Blue Cross and Blue Shield"), an independent fiscal intermediary hired to conduct such audits. After determining that this procedure was used in both 1985 and 1986, Blue Cross and Blue Shield disallowed the Medicare bad debt claims for both fiscal years. This decision was based on the Secretary's interpretation of "reasonable collection efforts" contained in Section 310 of the Provider Reimbursement Manual.

Section 310 of the Provider Reimbursement Manual provides that: "To be considered a reasonable collection effort, a provider's effort to collect Medicare deductible and coinsurance amounts must be similar to the effort the provider puts forth to collect comparable amounts from non-Medicare patients." Provider Reimbursement Manual § 310. That provision goes on to state that, with regard to collection agencies,

> A provider's collection effort may include the use of a collection agency in addition to or in lieu of subsequent billings, follow-up letters, telephone and personal contacts. Where a collection agency is used, Medicare expects the provider to refer all uncollected patient charges of like amount to the agency without regard to class of patient.... Therefore, if a provider refers to a collection agency its uncollected non-Medicare patient charges which in amount are comparable to the individual Medicare deductible and coinsurance amounts due the provider from its Medicare patients, Medicare requires the provider to also refer its uncollected Medicare deductible and coinsurance amounts to the collection agency.

Provider Reimbursement Manual § 310(A). The intermediary found this regulation to preclude payment of Medicare bad debt claims when, as in Mt. Sinai's case, Medicare accounts still outstanding after 120 days were not referred to outside collection agencies while similar non–Medicare accounts were.

Mt. Sinai appealed the decision of the fiscal intermediary to the Provider Reimbursement Review Board pursuant to 42 U.S.C. § 1395oo(f). The Provider Reimbursement Review Board disagreed with the fiscal intermediary and found that the collection efforts employed by the hospital were reasonable and based on sound business judgment. The intermediary's action in disallowing the claims was accordingly ruled improper, and Mt. Sinai's Medicare bad debt claims were deemed reimbursable.

The Secretary, through the Health Care Financing Administration, chose to review the Provider Reimbursement Review Board's determination. In the course of this review, the Secretary determined that the fiscal intermediary's decision to deny reimbursement of Mt. Sinai's Medicare bad debt claims was supported by the record and consistent with Medicare regulations. The Secretary went on to state that Mt. Sinai had not engaged in reasonable collection efforts with regard to Medicare claims, thereby reversing the decision of the Provider Reimbursement Review Board. Mt. Sinai's claims were thus denied.

Mt. Sinai sought judicial review of the Secretary's decision in accordance with the provisions of the Administrative Procedures Act. 42 U.S.C. § 1395oo(f); Administrative Procedures Act § 706. The district court found the Secretary's interpretation of Medicare regulations to be reasonable, but held that the application of those regulations to Mt. Sinai was not warranted. Specifically, the district court found that Mt. Sinai operated in an extremely poor area and served mainly indigent clients. In light of these special circumstances, the court did not feel the record contained the substantial evidence necessary to support the Secretary's application of the relevant Medicare regulations to Mt. Sinai. The district court deemed the Secretary's action to be arbitrary and capricious, denied the Secretary's motion for summary judgment, and granted summary judgment to Mt. Sinai. *Mount Sinai Hosp. Med. Ctr. v. Shalala*, 1998 WL 155922, at *7 (N.D.Ill. 1998). It is from this decision that the Secretary now appeals.

## II. Analysis

### A.

We review the district court's denial of the Secretary's motion for summary judgment, and its decision to grant summary judgment to Mt. Sinai, *de novo. See Johnson v. Zema Sys. Corp.*, 170 F.3d 734, 742 (7th Cir.1999). In order to conclude that summary judgment was properly entered on behalf of Mt. Sinai, we must determine that after a careful review of the record (including pleadings, depositions, answers to interrogatories, admissions, and affidavits), "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In determining whether a genuine issue of material fact exists, we must construe all facts in the light most favorable to the non-moving party and draw all reasonable inferences in favor of that party. *See Bombard v. Fort Wayne Newspapers, Inc.*, 92 F.3d 560, 562 (7th Cir.1996). "A genuine issue for trial exists only when a reasonable jury could find for the party opposing the motion based on the record as a whole." *Roger v. Yellow Freight Sys., Inc.*, 21 F.3d 146, 149 (7th Cir.1994).

We, as did the district court, review the Secretary's denial of Mt. Sinai's claims for reimbursement of Medicare bad

debts under the provisions of the Administrative Procedures Act. Administrative Procedures Act § 551 *et seq.* We must uphold the Secretary's determination unless we conclude that the she made "an arbitrary or capricious decision, abused [her] discretion, acted contrary to law or regulation, or lacked the support of substantial evidence." *St. Clair v. Secretary of Navy,* 155 F.3d 848, 851 (7th Cir.1998) (citing *Chappell v. Wallace,* 462 U.S. 296, 303, 103 S.Ct. 2362, 76 L.Ed.2d 586 (1983)). While this standard does not mean no review at all, *see Citizens to Preserve Overton Park,* 401 U.S. 402, 415, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971), the Secretary's decision will be accorded a high degree of deference. *See Thomas Jefferson Univ. v. Shalala,* 512 U.S. 504, 512, 114 S.Ct. 2381, 129 L.Ed.2d 405 (1994). We will not find her action to be arbitrary or capricious as long as "the agency's path may be reasonably discerned." *Bagdonas v. Dep't of Treasury,* 93 F.3d 422, 426 (7th Cir.1996) (quoting *Bowman Transp., Inc. v. Arkansas–Best Freight Sys., Inc.,* 419 U.S. 281, 286, 95 S.Ct. 438, 42 L.Ed.2d 447 (1974)).

### B.

■ The Secretary bases her contention that Mt. Sinai's bad debt collection procedures were unreasonable on the interpretation of "reasonable collection efforts" contained in Section 310 of the Provider Reimbursement Manual. The Secretary contends that this interpretation is clear in requiring that Medicare and non-Medicare accounts be treated alike, and that Mt. Sinai violated this regulation when it referred non-Medicare accounts to an outside collection agency while failing to do the same with Medicare accounts. Under this interpretation of the Medicare regulations, Mt. Sinai has failed to engage in reasonable collection efforts in regard to Medicare accounts and would not qualify for reimbursement of Medicare bad debts under 42 C.F.R. § 413.80(e)(2).

In granting summary judgment to Mt. Sinai, the district court did not reject the Secretary's interpretation of "reasonable collection efforts" contained in Section 310 of the Provider Reimbursement Manual. Rather, the court specifically found that Section 310's general requirement that Medicare and non-Medicare accounts be treated alike at all stages of the collection process was not "arbitrary or capricious." *Mount Sinai,* 1998 WL 155922 at *6. The district court went on to state, however, that the evidence showed that Mt. Sinai had "complied with the spirit of the regulation," and that the record lacked the substantial evidence necessary to support the Secretary's conclusion that Mt. Sinai failed to engage in reasonable collection efforts under the unique circumstances it faced. *Id.* Furthermore, the district court held that Mt. Sinai's decision to treat Medicare accounts and non-Medicare accounts differently reflected sound business judgment in light of the low rate of return Mt. Sinai could expect on Medicare accounts. *Id.* The district court concluded that while the Secretary's interpretation of Section 310 was reasonable, the application of that rule to a hospital in the unique position of Mt. Sinai was "arbitrary and capricious." *Id.*

After a careful review of the administrative record, we cannot accept the district court's conclusion that the Secretary's actions in this case were so unreasonable as to run afoul of our deferential standard of review. Because Congress did not define the meaning of "reasonable collection efforts" in the statute, the Secretary has the discretion and authority to interpret that term. *See Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 843–44, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984) ("If Congress has explicitly left a gap for the agency to fill, there is an express delegation of authority to the agency to elucidate a specific provision of the statute by regulation."). Interpreting "reasonable collection efforts" to require that Medicare and non-Medicare accounts be treated the same is a reasonable exercise of that discretion. This requirement prevents cost-shifting and gives

providers the flexibility to determine their own collection policies, while at the same time ensuring that providers are as diligent in their collection efforts when government money is involved as when their own is at stake. *See Univ. Health Serv., Inc. v. Health & Human Services*, 120 F.3d 1145, 1150 (11th Cir.1997). In light of these rational justifications, we cannot conclude that the Secretary's interpretation contained in Section 310 of the Provider Reimbursement Manual is arbitrary or capricious, an abuse of discretion, or contrary to law or regulation. Having determined that the regulation at issue is not arbitrary or capricious, we must now consider whether its application to Mt. Sinai was supported by substantial evidence.

■ The substantial evidence standard of the Administrative Procedures Act is generally used as the standard of review for an agency's factual findings. 5 U.S.C. § 706; *see Hendrickson v. Federal Deposit Ins. Corp.*, 113 F.3d 98, 102 (7th Cir. 1997). In this case, the essential facts are not in dispute, so a detailed review of the Secretary's factual findings is not necessary. We must look, however, to see whether "there [is] a rational relationship between the facts as the [Secretary] finds them and [her] ultimate conclusion." *Wisconsin Cent. Ltd. v. Surface Transp. Bd.*, 112 F.3d 881, 887 (7th Cir.1997); *see Schneider Nat'l, Inc. v. ICC*, 948 F.2d 338, 343 (7th Cir.1991). We presume that the district court found such a rational relationship lacking in holding that the Secretary's decision in this case was unsupported by substantial evidence.

The district court found that the particular circumstances of Mt. Sinai's operation made the Secretary's decision as to an otherwise reasonable rule unreasonable when applied to the facts of this case. We disagree. While Mt. Sinai claims that referring Medicare accounts to a collection agency would not be cost-effective, and that such efforts might prevent needy patients from seeking treatment, the record does not contain conclusive proof that these allegations would have proved true in 1985 and 1986. Absent such proof, we cannot conclude that the Secretary's determination to the contrary is not supported by substantial evidence. *See Univ. Health*, 120 F.3d at 1151. After a careful consideration of the administrative record, we find that there is substantial evidence to support the Secretary's conclusion that Mt. Sinai failed to engage in reasonable collection efforts based on sound business judgment.[1] *See Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938) (defining substantial evidence as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion"). Where, as here, the Secretary's decision is supported by substantial evidence and is not arbitrary or capricious, we must uphold that decision.[2]

## C.

Our conclusion that the Secretary's action in denying Mt. Sinai's Medicare bad debt claims for the 1985 and 1986 fiscal years was not arbitrary or capricious does

1. The district court did find that Mt. Sinai showed sound business judgment in deciding not to refer outstanding Medicare accounts to a collection agency. Having concluded that Mt. Sinai fails to meet the "reasonable collection efforts" requirement for reimbursement of Medicare bad debts, we need not address the issue of sound business judgment.

2. Mt. Sinai cites two previous decisions by the Provider Reimbursement Review Board in support of its argument. *See Reed City Hosp. v. Blue Cross and Blue Shield Ass'n.*, PRRB Decision No. 86–D67, Feb. 20, 1986, Medi-care and Medicaid Guide (CCH) ¶ 35,474; *St. Francis Hosp. and Med. Ctr. v. Blue Cross and Blue Shield Ass'n*, PRRB Decision No. 86–D21, Nov. 12, 1985, Medicare and Medicaid Guide (CCH) ¶ 35,302. While these two opinions do indicate that different treatment of Medicare and non-Medicare accounts may constitute reasonable collection efforts under certain circumstances, they are specific applications of Medicare rules and regulations and "do not dictate a given result in light of the specific circumstances here." *Univ. Health*, 120 F.3d at 1151 n. 4.

not end our inquiry in this case. The parties also dispute the effect of a legislative moratorium contained in the Omnibus Budget Reconciliation Act of 1987 ("OBRA moratorium") that prohibits changes in Medicare bad debt policy. The OBRA moratorium provides:

> In making payments to hospitals under [the Medicare program], the Secretary of Health and Human Services shall not make any change in the policy in effect on August 1, 1987, with respect to payment under [the Medicare program] to providers of service for reasonable costs relating to unrecovered costs associated with unpaid deductible and coinsurance amounts incurred under [the Medicare program] (including the criteria for what constitutes a reasonable collection effort ... and for determining whether to refer a claim to an external collection agency). The Secretary may not require a hospital to change its bad debt collection policy if a fiscal intermediary, in accordance with the rules in effect as of August 1, 1987, with respect to criteria for ... determining whether to refer a claim to an external collection agency, has accepted such policy before that date.

Omnibus Budget Reconciliation Act of 1987, Pub.L. No. 100–203, § 4008(c), 101 Stat. 1330–55, as amended by the Technical Miscellaneous Revenue Act of 1988, Pub.L. No. 100–647, § 8402, 102 Stat. 3798, and as further amended by the Omnibus Budget Reconciliation Act of 1989, Pub.L. No. 101–239, § 6023, 103 Stat. 2176 (*reprinted in* 42 U.S.C. § 1395f n. (1992)).

The terms of the OBRA moratorium focus this dispute on the effect of the Secretary's issuance of notices of program reimbursement and payment of money under such notices prior to 1985 and 1986, during years in which Mt. Sinai followed the same collection procedures to which the Secretary now objects. Mt. Sinai contends that the payment of such claims can constitute "acceptance" for the purposes of the OBRA moratorium, and we find this

argument persuasive in most instances. "A notice of program reimbursement, and the reimbursement that flows from it, are the only tangible forms of acceptance a provider can expect from an intermediary." *Hennepin County Med. Ctr. v. Shalala*, 81 F.3d 743, 749 (8th Cir.1996); *Univ. Health*, 120 F.3d at 1152. To accept a more demanding definition of acceptance, as the government urges us to do, would deprive the OBRA moratorium of much of its practical significance, since more explicit forms of acceptance would almost always be lacking. In the majority of cases, then, reimbursement is the functional equivalent of acceptance and should be treated as such.

■ While we find this interpretation of acceptance to be appropriate in most cases, we do not adopt it as a blanket rule. Medicare regulations specifically provide that a recommendation for reimbursement may be reopened within three years of issuance if the Secretary is privy to new information as to the circumstances surrounding reimbursement. 42 C.F.R. § 405.1885. This provision would be deprived of all effect if notice of reimbursement and payment always constituted acceptance, since the OBRA moratorium would always operate to preclude reconsideration of those payments. In order to give appropriate meaning to both the concept of acceptance and the possibility of reconsideration, we must conclude that there are limited circumstances, involving new information, in which retroactive disallowance is permissible. *See Hennepin*, 81 F.3d at 749. The district court did not reach the issue of whether acceptance of Mt. Sinai's practices occurred on the facts of this case. There is no need to resolve that issue now, however, because we find that any such acceptance would not be "in accordance with the rules in effect as of August 1, 1987."

■ The OBRA moratorium states that "[t]he Secretary may not require a hospital to change its bad debt collection policy if a fiscal intermediary, in accordance with the

rules in effect as of August 1, 1987 ..., has accepted such policy before that date." Under the Secretary's interpretation of this provision, the language precludes acceptance of policies that are contrary to rules and regulations in effect as of August 1, 1987. Such rules and regulations include both the rule on reasonable collection efforts in 42 C.F.R. § 413.80(e)(2) and the equal treatment requirement of Section 310 of the Provider Reimbursement Manual, which were in effect on August 1, 1987. The Secretary's interpretation of the OBRA moratorium, when coupled with the ability to reopen consideration of prior reimbursements, allows the Secretary to go back and correct prior erroneous decisions by fiscal intermediaries despite the provisions of the OBRA moratorium.

The Eleventh and Eighth Circuits have accepted the Secretary's reading of the OBRA moratorium, *see Univ. Health,* 120 F.3d 1145; *Hennepin,* 81 F.3d 743, but the Fifth Circuit has rejected it. *See Harris County Hosp. Dist. v. Shalala,* 64 F.3d 220 (5th Cir.1995). The Fifth Circuit reasoned that such an interpretation deprives the OBRA moratorium of its meaning by allowing the Secretary to force changes in a provider's policy as to collection efforts through the withholding of bad debt reimbursement payments. *Id.* at 223 n. 11. We do not feel the Secretary's interpretation of the OBRA moratorium has such drastic results. The Secretary's reading of the OBRA moratorium allows the Secretary to go back and correct improper applications of the rules as they existed on August 1, 1987, but prevents her from retroactively applying new rules or new interpretations of existing rules. *See Hennepin,* 81 F.3d at 751. This approach properly effectuates congressional intent while at the same time according appropriate deference to the Secretary's interpretations of Medicare rules and regulations.

■ We agree with the Secretary's interpretation of the OBRA moratorium, and conclude that, for the OBRA moratorium to apply, the "provider [must have been] in compliance with rules existing on August 1, 1987, as embodied in the regulations, the P[rovider] R[eimbursement] M[anual], and [P]rovider [R]eimbursement [R]eview [B]oard decisions." *Id.* at 751. Since we have already determined that Section 310 of the Provider Reimbursement Manual, which was in existence well before August 1, 1987, requires like treatment of Medicare and non-Medicare accounts, it follows that Mt. Sinai's practice of treating Medicare and non-Medicare accounts differently was not in compliance with Medicare rules. Accordingly the OBRA moratorium does not apply, and the Secretary is not precluded by that amendment from retroactively disallowing Mt. Sinai's claims for Medicare bad debt reimbursement for the 1985 and 1986 fiscal years.

**D.**

■ Mt. Sinai finally contends that Section 310 of the Provider Reimbursement Manual is a substantive rule and, under the Administrative Procedures Act, is invalid unless promulgated under the formal rulemaking procedures of that Act. 5 U.S.C. § 553. We reject this contention. Where, as here, the regulation "simply states what the administrative agency thinks the statute means," the regulation is properly considered interpretive and need not be promulgated under the rulemaking procedures of the Administrative Procedures Act. 5 U.S.C. § 553(A); *General Motors Corp. v. Ruckelshaus,* 742 F.2d 1561, 1565 (D.C.Cir.1984).

**III. Conclusion**

We conclude that the Secretary's decision in disallowing Mt. Sinai's claims for bad debt reimbursement was not arbitrary or capricious and was supported by substantial evidence, and that the Secretary's decision was not precluded by the OBRA moratorium. We REVERSE the decision of the district court and REMAND this case for

further proceedings consistent with this opinion.

REVERSED AND REMANDED.