United States Court of Appeals
Fifth Circuit

**F I L E D**

**September 22, 2003**

Charles R. Fulbruge III
Clerk

**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

———————————————

No. 02-60834

———————————————

LOUISIANA DEPARTMENT OF HEALTH AND HOSPITALS,

Petitioner,

versus

CENTER FOR MEDICARE AND MEDICAID SERVICES; THOMAS A. SCULLY, in his official capacity as Administrator of the Centers for Medicare and Medicaid Services; UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES; TOMMY G. THOMPSON, in his official capacity as Secretary of the U.S. Department of Health and Human Services,

Respondents.

———————————————————————————

Appeal from the Administrator of the Center for
Medicare and Medicaid Services

———————————————————————————

Before WIENER, CLEMENT, and PRADO, Circuit Judges.

EDITH BROWN CLEMENT, Circuit Judge:

This appeal arises following the determination, by the Administrator of the Center for Medicare and Medicaid Services, that Rural Health Clinics in Louisiana do not furnish "hospital services", and hence are not eligible for certain reimbursements. Because we find that interpretation to be unreasonable, we REVERSE.

**I. FACTS AND PROCEEDINGS**

A.    Statutory and regulatory background

(1)    The Medicaid program

Medicaid is designed to enable states to offer medical assistance to certain low-income, elderly, and disabled individuals whose income and resources are inadequate to pay for necessary medical services. *See* 42 U.S.C. § 1396 (2003). Under the Medicaid statute, the federal government and the states cooperate and share the cost of providing medical assistance to Medicaid-eligible persons.

The Medicaid statute gives each state flexibility in designing and administering its own Medicaid program. Under the statute, a state that elects to participate in the program submits a "state plan" for review and approval by the Secretary ("Secretary") of the Department of Health and Human Services ("HHS"). *See generally* 42 U.S.C. § 1396a. A state that seeks to change its state plan may submit a "state plan amendment" to the Center for Medicare and Medicaid Services ("CMS") for review and approval. *See* 42 C.F.R. §§ 430.14 - 430.15 (2002) (recording Secretary's delegation of authority for approving state plan amendments to CMS). CMS, on behalf of the Secretary, is required to approve a state plan amendment that complies with all applicable statutes and regulations. 42 U.S.C. § 1396a(b). Once CMS approves a state plan amendment, the Secretary pays the state a percentage of the "total amount [the state] expended . . . as medical assistance under the State plan." 42 U.S.C. § 1396b(a)(1). The percentage for Louisiana for the current fiscal year is 71.28%. *See* 66 Fed. Reg. 59790 (Nov. 30, 2001); *see also* 67 Fed. Reg. 69223 (Nov. 15, 2002) (raising Louisiana's percentage to 71.63% for the fiscal year starting October 1, 2003).

**(2)    Provisions for disproportionate share hospitals**

In 1981, Congress added a requirement that state plans include higher reimbursement rates for "public hospitals and teaching hospitals which serve a large Medicaid and low income population [and

2

which] are particularly dependent on Medicaid reimbursement . . . ." 42 U.S.C. § 1396a(a)(13)(A) (noting that a state plan must "provide for a public process for determination of rates of payment under the plan for hospital services" under which "such rates take into account . . . the situation of hospitals which serve a disproportionate number of low-income patients with special needs"). To meet the so-called disproportionate share ("DSH") requirement, states must define and list DSH hospitals that serve a greater percentage of Medicaid and low-income patients. 42 U.S.C. § 1396r-4(a)(1); *see also* 42 U.S.C. § 1396r-4(b)(1) (restricting DSH designation to hospitals with low-income utilization rates exceeding 25% or to hospitals whose Medicaid inpatient utilization rate is at least one standard deviation above the mean Medicaid inpatient utilization rate of all in-state hospitals receiving Medicaid payments). States must provide an "appropriate increase in the rate or amount of payment for such services." *Id.* Additionally, the statute contemplates that reimbursements will reflect not only the cost of caring for Medicaid recipients, but also the cost of charity care given to uninsured patients. *Id.* § 1396r-4(b)(3) (basing definition of "low-income utilization rate" in part on quantity of charity care provided by the hospital). In 1987 and 1988, Congress added specific requirements for states to comply with this general mandate through higher payments to designated hospitals.

**(3)      State-specific and hospital-specific limits on DSH payment adjustments**

In 1991, Congress directed the Secretary to determine state-specific limits on federal funding for DSH payments for each fiscal year, using a statutory formula. *See* 42 U.S.C. § 1396r-4(f) (capping Louisiana's DSH allotment for fiscal year 2002 at $631 million and for future fiscal years to the 2002 cap adjusted by the consumer price index). In 1993, Congress responded to reports that some hospitals received DSH payment adjustments that exceeded "the net costs, and in some instances the

3

total costs, of operating the facilities," by requiring hospital-specific limits on DSH payments. *See* H.R. REP. NO. 103-111, at 211-212 (1993), *reprinted in* 1993 U.S.C.C.A.N. 278, 538-539 (noting DSH payment adjustments seeped into state general funds to cover non-health care items including road construction).

The hospital-specific limitations are at the heart of the dispute in this case. The 1993 amendment limits the amount of DSH payments to a specific hospital to

> the costs incurred during the year of furnishing *hospital services* (as determined by the Secretary and net of payments under this title, other than under this section, and by uninsured patients) by the hospital to individuals who either are eligible for medical assistance under the State plan or have no health insurance (or other source of third party coverage) for services provided during the year.

42 U.S.C. § 1396r-4(g)(1)(A) (emphasis added).

CMS has not promulgated any regulations specifically addressing the hospital-specific DSH limit and thus has not addressed the use of the term "hospital services" as it relates to those limits. In a letter to State Medicaid directors dated August 17, 1994, the Health Care Financing Administration ("HCFA"), CMS's predecessor agency, stated:

> There are several important considerations that must be made in determining the cost of services under the DSH limit, whether for Medicaid or uninsured individuals. First, the legislative history of this provision makes it clear that States may include both inpatient and outpatient costs in the calculation of the limit. *Second, in defining "costs of services" under this provision, HCFA would permit the State to use the definition of allowable costs in its State plan, or any other definition, as long as the costs determined under such a definition do not exceed the amounts that would be allowable under the Medicare principles of cost reimbursement. . . . HCFA believes this interpretation of the term "costs incurred" is reasonable because it provides States with a great deal of flexibility up to a maximum standard that is widely known and used in the determination of hospital costs.*

4

Letter from Sally K. Richardson, Department of Health & Human Services, to State Medicaid Directors 3 (Aug. 17, 1994) (emphasis added).

**(4)      Rural Health Clinics ("RHCs")**

RHCs generally furnish "those diagnostic and therapeutic services and supplies that are commonly furnished in a physician's office or at the entry point into the health care delivery system." 42 C.F.R. § 491.9(c)(1). RHCs also provide "medical emergency procedures as a first response to common life-threatening injuries and acute illness and has available the drugs and biologicals commonly used in life saving procedures, such as analgesics, anesthetics (local), antibiotics, anticonvulsants, antidotes and emetics, serums and toxoids." *Id.* 491.9(c)(3). Services in RHCs are furnished by a physician or a mid-level practitioner, such as a nurse practitioner or physician assistant, acting under the direction of a physician. *Id.* § 440.20(b)(1)-(3).

## B.      Louisiana's efforts to increase DSH payment adjustments

Louisiana is largely rural and most of the rural areas are medically under-served. *See* 67 Fed. Reg. 21962-67 (May 1, 2002) (listing urban areas from the 2000 census). Recognizing that small rural hospitals bear significant costs for the services they provide to low-income uninsured patients through their "hospital-based" clinics,[1] Louisiana sought guidance from HHS as to how those costs could be taken into account as part of a rural hospital's DSH payment adjustment. In a January 19, 1999 letter U.S. Senator John Breaux asked Donna Shalala, the then Secretary of HHS, to clarify when RHC costs could be taken into account for DSH purposes. In her response, Secretary Shalala wrote:

---

[1] RHCs are eligible to be "hospital-based RHCs" if certain conditions are met. *See* 42 C.F.R. § 413.65.

5

While I agree that a state has discretion to 'license or formally approve' a hospital-based RHC as an outpatient hospital clinic for purposes of the Medicaid DSH program, I [cannot] require that states consider the costs of such a facility in calculating DSH limits. Under applicable law, a State has the flexibility to include a hospital-based RHC under the license of the hospital, to separately license a hospital-based RHC, or to issue a license which recognizes the dual nature of the clinic as both an outpatient hospital clinic and an RHC. *Where a state has chosen to license these clinics as hospital outpatient departments, and they are certified as part of the hospital, the state would be able to include the uncompensated care costs related to RHC-provided hospital outpatient services in the calculation of a hospital's DSH payment limit.* However, if the state has decided that its hospital-based RHCs are to be separately licensed, then the clinics' costs cannot be included in DSH calculations.

. . .

Our understanding is that Louisiana law requires separate licensing of RHCs and does not provide for any other formal approval process to designate outpatient hospital facilities. Even if an RHC in Louisiana is based at the hospital and owned by the same overall institution, its uncompensated care costs cannot be recognized for DSH purposes because the services are not considered hospital services by Medicaid. The services provided by these entities can only be considered RHC services, and these clinics would receive cost-based reimbursement for their expenditures. This distinction is critical because, as stated above, only uncompensated costs associated with hospital services can be included in the Medicaid hospital specific DSH limit calculation. However, *if Louisiana were to create a process to licence* (sic) *or "formally approve" hospital-based RHCs as hospital outpatient departments, then the clinics' uncompensated care costs associated with providing hospital outpatient services could be included in the DSH calculation for their affiliated hospitals.*

Letter from Donna E. Shalala, Secretary of Health & Human Services, to Senator John B. Breaux 1-2 (July 30, 1999) (emphasis added).

The Louisiana legislature responded to Secretary Shalala's letter by immediately amending the state statute governing RHC licensing requirements. The amendment provides:

[A] rural health clinic that meets the definition of the Health Care Financing Administration as hospital-based and is operated by a rural hospital . . . shall not be

6

required to secure a separate license to receive certification by the Health Care Financing Administration and designated reimbursement under Medicaid and Medicare as long as the rural hospital meets state licensure requirements. Such hospital shall assure that the clinic meets all other requirements of [the rural health clinic licensure statutue], as well as any pursuant rules and regulations . . . .

LA. REV. STAT. ANN. § 40:2197(G) (West 2001).

Having amended state law, the State submitted a state plan amendment ("SPA 01-03"), to CMS for approval. SPA 01-03 implemented Secretary Shalala's guidance by providing that: "Any uncompensated costs of providing health care services in a rural health clinic *licensed as part of a small rural hospital* . . . shall be considered outpatient hospital services in the calculation of uncompensated costs." Letter from David W. Hood, Secretary, Louisiana Department of Health & Hospitals, to Calvin G. Cline, Associate Regional Administrator, Health Care Financing Administration Attachment 4 (May 15, 2001) (emphasis added).

CMS disapproved SPA 01-03 on August 15, 2001. CMS referred to regulations defining "outpatient hospital services" in order to conclude that the services at issue did not fall within the meaning of the term "hospital services", as used in 42 U.S.C. § 1396r-4(g). *See* 42 C.F.R. 440.20(a). Despite the fact that state law no longer required separate licensing of hospital-based RHCs, the disapproval letter predicated its analysis on the seemingly inapposite observation that "a state may not include costs or revenues in the DSH calculation which are attributable to services rendered in a *separately licensed/certified entity*, even if that entity is owned by the same institution." Letter from Thomas A. Scully, Administrator for Centers for Medicare & Medicaid Services, to David W. Hood, Secretary, Louisiana Department of Health & Hospitals (Aug. 15, 2001) (emphasis added).

7

The State requested reconsideration, and a hearing officer convened an administrative hearing on January 30, 2002. *See* 42 C.F.R. § 430.18 (providing for review of CMS disapprovals). The hearing officer on June 7, 2002, recommended that the disapproval be upheld. The Administrator on August 20, 2002, adopted the hearing officer's recommendation and upheld the disapproval. The Administrator stated that because hospital services and RHC services are defined separately under the Social Security Act and its implementing regulations, RHC services can *never* be considered outpatient hospital services. Louisiana State Plan Amendment 01-03, Doc. No. 2002-03 (Centers of Medicare & Medicaid Services Aug. 19, 2002). The Administrator reached that conclusion despite the fact that oftentimes the clinics are licensed by the hospital and provide exactly the same types of services as the hospital's outpatient emergency room, and the costs of providing these services are borne by the hospitals. Louisiana timely appeals.

## II. STANDARD OF REVIEW

This Court reviews the Administrator's decision disapproving a state plan amendment under the Administrative Procedure Act, 5 U.S.C. §§ 701-706 (2003), to ensure that the decision was not arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. *See* 5 U.S.C. § 706; *Harris County Hosp. Dist. v. Shalala*, 64 F.3d 220, 221 (5th Cir. 1995). In addition, this Court must defer to the Secretary's interpretation of Medicare legislation and its attendant regulations—the Secretary's interpretation of Medicare regulations is given "controlling weight unless it is plainly erroneous or inconsistent with the regulation." *Id.* If a statute is involved and its meaning is unambiguous, this Court must give effect to the intent of Congress. *See Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 842 (1984). This Court "shall have jurisdiction to

8

affirm the action of the Secretary or to set it aside, in whole or in part." 42 U.S.C. § 1316(a)(5) (West 1991).

## III. DISCUSSION

The dispositive issue in this case is whether the Administrator's disapproval of Louisiana's proposed state plan amendment was arbitrary or capricious, where the Administrator determined that the term "hospital services" as used in 42 U.S.C. § 1396r-4(g) does not include services provided by RHCs.

A. Analysis

Louisiana and its *amicus* list three reasons why the Administrator's disapproval of SPA 01-03 was arbitrary and capricious: (1) the services provided by hospital-based RHCs that are not separately licensed fall within the regulatory definition of "outpatient hospital services"; (2) the Congressional purpose behind the DSH program supports reimbursing hospital-based RHCs for the cost of caring for uninsured patients; and (3) CMS's own regulations recognize hospital-based RHCs are integral to their parent hospitals. CMS responds that the Administrator correctly found that "outpatient hospital services" and "rural health clinic services" are separate and distinct categories of services.

**(1)** **Whether services provided by hospital-based RHCs that are not separately licensed fall within the regulatory definition of "outpatient hospital services."**

The hospital-specific DSH limit allows reimbursement only of "the costs incurred during the year of furnishing *hospital services* . . . ." 42 U.S.C. § 1396r-4(g)(1)(A) (emphasis added). Noting that the agency has not defined "hospital services" for purposes of § 1396r-4(g), Louisiana asserts that Congress intended the phrase to include both inpatient and outpatient hospital

9

services.  In describing the 1993 DSH amendment, Congress wrote that the bill limits the amount of DSH payment adjustments to the costs "these facilities incur in furnishing *inpatient or outpatient services* to Medicaid-eligible patients and uninsured patients, less payments from Medicaid other than DSH payment adjustments" and uninsured patients.  H.R. CONF. REP. NO. 103-213, at 835 (1993), *reprinted in* 1993 U.S.C.C.A.N. 1088, 1524 (emphasis added).  CMS concedes that the phrase "hospital services" in § 1396r-4(g)(1)(A) refers to both inpatient and outpatient hospital services.

HHS regulations define both "inpatient hospital services" and "outpatient hospital services." "Outpatient hospital services" is defined as "preventative, diagnostic, therapeutic, rehabilitative, or palliative services" that, among other things, are furnished by an institution that is "licensed or formally approved as a hospital by an officially designated authority for State standard-setting . . . ."  42 C.F.R. § 440.20.  Louisiana asserts that services provided by hospital-based RHCs indisputably satisfy the first part of the definition, being "preventative, diagnostic, therapeutic, rehabilitative, or palliative."  RHCs satisfy the "licensed or formally approved" requirement, Louisiana maintains, because the clinics are not licensed independently from the parent hospitals.

Rather than rebuffing Louisiana's textual argument, with which it agrees in part, CMS analyzes the term "hospital services" with the premise that "outpatient hospital services" and "rural health clinic services" are mutually exclusive.  CMS notes: (1) federal statutes and regulations distinguish the terms in at least two places, *see* 42 U.S.C. §§ 1396d(a)(2) (enumerating categories of medical assistance services, including outpatient hospital services and rural health clinic services); 42 C.F.R. § 440.20 (defining each term); (2) until recently, RHC services and outpatient hospital services were subject to two entirely distinct payment regimes,

10

*see*, *e.g.*, 42 C.F.R. § 447.371 (designating reimbursement rules for rural health clinics); and (3) Louisiana *itself* recognizes in its state plan that RHC services and outpatient hospital services are distinct categories of services. CMS assumes, without explanation, that any service that a RHC renders may *never* be considered an outpatient hospital service *even if* the service fits within the regulatory definition of "hospital outpatient service".

We agree with Louisiana that a hospital-based RHC functions as a part of the hospital with which it is affiliated. The hospital employs clinic personnel, pays the clinic's bills, performs quality assurance, credentials the physicians and physician assistants employed by the clinic, owns or leases the building in which the clinic is located, handles payroll functions for the clinic, and provides medical supplies to the clinic.

(2)     Whether reimbursing hospital-based rural health clinics for the cost of caring for uninsured patients fulfills the Congressional purpose of DSH payment adjustments.

Louisiana argues that the Administrator's interpretation of § 1396r-4(g) conflicts with the broad goal of the DSH program—to support hospitals that serve low-income patients. Louisiana claims that Congress has, on multiple occasions, demonstrated an intention of broadly defining the DSH program. *See*, *e.g.*, H.R. Rep. No. 100-391, at 524-27 (1987) (demonstrating: (1) Congress's solicitude for the needs of rural hospitals by exempting them from certain requirements otherwise applicable to DSH hospitals, and (2) Congress's awareness of state plans that offer extra payments to some hospitals because they provide "outpatient services and outpatient pharmacy to Medicaid and non-Medicaid eligible low-income patients"); H.R. REP. NO. 101-964, at 868, 871 (1990) (explaining new provision in § 1396r-4(c)(3) that allows additional DSH payments to designated hospitals to finance services for Medicaid and low-income patients).

11

Louisiana recognizes that when Congress amended the statute in 1993, it introduced a hospital-specific DSH limit. But Louisiana emphasizes that the 1993 amendment's use of the phrase "hospital services" *expanded* the range of services covered by DSH by explicitly rejecting HCFA's former position that only inpatient services were covered. *See*, *e.g.*, *State of New York by Perales v. Bowen*, 811 F.2d 776, 777-78 (2d Cir. 1987) (considering a contention by HCFA that DSH adjustment payments could not include the costs of outpatient hospital services). Louisiana contends that the Administrator's interpretation—which precludes reimbursement to hospitals for uncompensated care provided in their RHCs even though the *same care* provided to the *same patients* in a less clinically appropriate and more costly emergency room would be covered—is antithetical to the intention of Congress. Here too it seems that Louisiana presents the stronger argument.

**(3)    Whether CMS's own regulations recognize hospital based rural health clinics are integral to their parent hospitals.**

Louisiana finally argues that the regulations governing whether a RHC is hospital based[2] demonstrate that qualifying clinics operate as any other hospital outpatient department. For instance, the regulations require that, in order to be considered hospital based, a clinic must: have common licensure with the parent facility; provide services that are fully integrated with the hospital's services; share income and expenses with the hospital; hold out to the public that it is part of the hospital; and demonstrate it is under the control and ownership of the hospital. *See* 42 C.F.R. § 413.65(d)(3).

Louisiana also notes that the regulations have treated RHCs as hospital outpatient departments for Medicare reimbursement *limitations*. Until recently, Medicare reimbursed outpatient services on

_____

[2] The governing regulations refer to "provider based" RHCs. *See*, *e.g.*, 42 C.F.R. § 413.65. Hospital based RHCs are a subset of provider based RHCs.

12

a reasonable-cost basis, except that certain reductions in the calculation of reasonable costs were mandated. Under 42 C.F.R. § 413.124, "the reasonable costs of outpatient hospital services (other than capital-related costs of such services) are reduced by 5.8 percent." Similarly, under 42 C.F.R. § 413.130, capital-related costs of these hospitals are reduced by 10 percent. In the past, HCFA required hospitals to treat their hospital-based RHCs as outpatient departments for reimbursement purposes.

It seems clear that, without justification, the Administrator's decision made an assumption about outpatient hospital services and RHC services—that they are substantially different—that HCFA's previous regulations showed to be unfounded.

B. The Administrator's decision was arbitrary and capricious

Louisiana changed its law in response to, and its understanding is in accordance with, former Secretary Shalala's guidance. Louisiana eliminated Secretary Shalala's primary objection to the plan—separate licensing requirements for RHCs—and instead adopted a common licensure regime. Not only were these changes substantial and made in good faith by the Louisiana legislature, but, when questioned directly at oral argument, counsel for CMS was unable to offer any other language that Louisiana should have used to comply with Secretary Shalala's letter.

CMS does not seriously dispute that RHCs provide medical services traditionally provided in hospitals. We agree with Louisiana that commonly-licensed RHCs, like traditional hospitals, provide medical service that is "preventative, diagnostic, therapeutic, rehabilitative, or palliative," 42 C.F.R. § 440.20, thereby satisfying the first part of the definition of "hospital services".

The second part of the definition requires services to be furnished by an institution that is "licensed or formally approved as a hospital by an officially designated authority for State standard-

13

setting . . . ." *Id.* The Administrator adopted the recommendation of a hearing officer who ignored the critical fact that Louisiana, with an eye to this definition, enacted a system of common licensure for hospital based RHCs. Whether medical care falls within the second part of the definition heavily depends on the licensing scheme of the institution furnishing the service. The Administrator's assumption—that the nature of a service, and not the circumstances under which the service is delivered, determines its categorization—ignores the common licensure scheme, the clear textual analysis offered by Louisiana, and the previous Medicare regulations that analyzed hospitals and RHCs in a similar manner. Given the Administrator's decision was made without proper consideration of the appropriate facts and contravenes prior regulations promulgated by the HCFA itself, we hold that the Administrator's decision was arbitrary and capricious, and cannot stand.

## IV. CONCLUSION

For the above stated reasons, we REVERSE the judgment of the Administrator.