NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with

FED. R. APP. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted September 16, 2009[*]
Decided September 16, 2009

**Before**

JOEL M. FLAUM, *Circuit Judge*

TERENCE T. EVANS, *Circuit Judge*

DIANE S. SYKES, *Circuit Judge*

No. 09-1517

| | |
|---|---|
| DAWN BOUTTÉ,<br> *Plaintiff-Appellant*,<br><br>  *v.*<br><br>ARNE DUNCAN,<br>Secretary of the Department of<br>Education<br> *Defendant-Appellee.* | Appeal from the United States District<br>Court for the Northern District of<br>Illinois, Eastern Division.<br><br>No. 07 C 3233<br><br>Ronald A. Guzmán,<br>*Judge.* |

**O R D E R**

A student borrower of federal educational aid may have her loan liability discharged in the event of death or permanent and total disability.  20 U.S.C. § 1087(a).  Claiming that she is disabled, Dawn Boutté asked the Department of Education to discharge her student-loan debt, but the agency concluded that Boutté had not submitted sufficient evidence of

---

[*]After examining the briefs and the record, we have concluded that oral argument is unnecessary.  Thus, the appeal is submitted on the briefs and the record.  *See* FED. R. APP. P. 34(a)(2).

disability and denied her request. Proceeding pro se Boutté filed this lawsuit against the Secretary of Education, and the district court interpreted her complaint as a request for judicial review of an adverse agency decision, *see* 5 U.S.C. § 702. The district court granted summary judgment in favor of the agency, and we affirm.

To fund her studies at Columbia College in Chicago, Illinois, during the 1996-97 school year, Boutté accepted four loans totaling $13,250 through the William D. Ford Federal Direct Loan Program. She later defaulted on all four loans and, with accrued interest, owed a balance of $15,467 as of July 2007. Boutté suffers from, among other ailments, severe spinal stenosis and osteoarthritis, and since January 2003 she has submitted at least three applications to the Department of Education for a discharge on disability grounds. The first two applications were immediately denied for failure to provide supporting documentation, but the third was substantiated by a letter from Boutté's physician, Dr. Theri Raby, opining that she had been unable to work since November 2002. Based on that letter, the agency preliminarily approved Boutté's application pending further investigation.

From March to June 2005, the agency's medical review team sought additional documentation from Dr. Raby to determine whether Boutté truly is "permanently and totally disabled," as required by 20 U.S.C. § 1087(a). The agency's investigators specifically wanted details about Boutté's residual functioning and whether she was taking pain medication, using any assistive devices, or making plans for surgical intervention. Dr. Raby failed to provide the requested information but instead submitted two brief letters. The first, dated April 4, 2005, offers Dr. Raby's view that Boutté became "permanently and totally disabled on November 15, 2002" and stands little chance of ever improving. The second letter, dated May 19, 2005, explains that Boutté's spinal stenosis and osteoarthritis are "moderately controlled with medication and physical therapy" but probably would progress without surgery or other "drastic measures," and that Boutté's treatment plan included physical therapy, medication, and weight loss. The agency's medical investigators deemed the information in these letters too sparse to establish that Boutté is permanently and totally disabled and thus denied her application in June 2005, but Boutté was still invited to provide additional evidence. Boutté submitted a follow-up letter from Dr. Raby in September 2005 stating that her ailments make her "unable to walk, sit, or stand for long periods of time" and restrict her from lifting anything heavier than 5 pounds. An agency memo in the record also memorializes a December 2005 conversation in which Dr. Raby told the agency investigator that Boutté's spinal stenosis had progressed to the point where she could not return to work because "she has to walk with a cane and she has severe lower back pains." Concluding again that Boutté had not established that she is permanently and totally disabled, the agency again denied the application in February 2006.

In March 2006 Boutté filed a lawsuit in federal district court seeking review of the agency's denial of her application for a loan discharge. Boutté's doctors produced ten years of medical records during discovery, none of which Boutté had previously given to the Department of Education. The district court remanded the case to the agency for reconsideration based on this new evidence. The agency's medical investigators concluded, however, that the additional evidence still did not satisfy its request for information about Boutté's residual functioning, medications, assistive devices, or surgical plans, and that Dr. Raby still had not explained why Boutté could not work in any capacity. Indeed, Dr. Raby's notes from Boutté's most-recent medical examination in December 2006 state that Boutté should be restricted to "light duty at work." The agency thus denied Boutté's application again in May 2007, and Boutté filed this lawsuit the following month. This time the district court concluded that Boutté lacked evidence that the Department of Education had abused its discretion or acted arbitrarily or capriciously in denying her application, and the court thus granted summary judgment for the agency.

We review the district court's grant of summary judgment de novo, construing all facts and reasonable inferences in favor of Boutté, the opposing party. *See Clancy v. Geithner*, 559 F.3d 595, 599 (7th Cir. 2009). Our review of the agency's decision is governed by the Administrative Procedure Act ("APA"), which permits us to set aside the decision of an administrative agency only if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A); *Israel v. USDA*, 282 F.3d 521, 526 (7th Cir. 2002). To determine whether an agency's decision was arbitrary or capricious, we ask if it was "'based on a consideration of the relevant factors and whether there has been clear error of judgment.'" *Ind. Forest Alliance, Inc. v. United States Forest Serv.*, 325 F.3d 851, 858-59 (7th Cir. 2003) (quoting *Marsh v. Oregon Natural Res. Council*, 490 U.S. 360, 378 (1989)). Under this highly deferential standard, we uphold an administrative decision so long as "the agency's path may be reasonably discerned." *Mt. Sinai Hosp. Med. Ctr. v. Shalala*, 196 F.3d 703, 708 (7th Cir. 1999) (internal quotation marks and citation omitted).

As an initial matter, we note that only "final agency action" is subject to judicial review under the APA. 5 U.S.C. § 704. The district court assumed without discussion that the Department of Education had taken final action, but the record does not include any formal document memorializing the agency's most-recent decision to deny Boutté's application for a loan discharge. The agency produced informal notes from its medical investigators and an internal memorandum explaining the decision to deny Boutté's request to have her loans discharged, but neither Boutté nor the agency submitted a written communication of that decision. (In contrast, when Boutté filed her first lawsuit, she attached copies of the formal notices she had received from the agency when it denied her applications in June 2005 and February 2006.) Nevertheless, the parties are in agreement that the agency did make a formal determination denying Boutté's application and

confirming her obligation to repay her loans, and so we conclude, as the district court assumed, that the Department of Education took "final agency action" for purposes of the APA. *See Bennett v. Spear*, 520 U.S. 154, 177-78 (1997) (explaining that agency action is "final," and thus subject to judicial review, when it "marks the consummation of the decisionmaking process" and "determines a party's rights or obligations").

And we agree with the district court that there is no genuine factual dispute about whether the agency's action was arbitrary and capricious or an abuse of discretion. Although the phrase "permanently and totally disabled" is not defined by statute, an agency regulation explains that the term describes "an individual who is unable to work and earn money because of an injury or illness that is expected to continue indefinitely or result in death." 34 C.F.R. § 682.200(b). If the Department of Education determines that the borrower's application does not conclusively prove that she is disabled, the agency may require the borrower to submit additional evidence. *Id.* § 682.402(c)(4)(v). Although Boutté argues that the medical evidence she submitted to the agency was sufficient to demonstrate that she is disabled, the record does not support her contention. Dr. Raby offered her opinion that Boutté's condition renders her "permanently and totally disabled" and "[t]here is no reasonable probability that the disabled condition will ever improve," but the agency was not required to accept this conclusory and unsupported assessment. *Cf. Dixon v. Massanari*, 270 F.3d 1171, 1177 (7th Cir. 2001) (explaining that Social Security Administration need not grant disability benefits simply because claimant's doctor says she is "disabled" or unable to work). Nor do the few specific details that Dr. Raby provided about Boutté's condition—that her ailments are "moderately controlled with medication and physical therapy," that her symptoms will worsen without surgery, that she walks with a cane and has severe lower back pain, and that she is "unable to walk, sit, or stand for long periods of time" or lift anything heavier than 5 pounds—come close to establishing that Boutté is unable to work in, for example, a sedentary position. Further, although in her appellate brief Boutté informs us that she presently receives federal disability-retirement and Social Security disability benefits, meaning that other arms of the federal government have classified her as "disabled," the form for obtaining a loan discharge specifically warns that the Department of Education is not bound by the standards of other agencies. Boutté, in any event, never submitted evidence, either to the Department of Education or to the district court, that she in fact receives disability benefits or, if she does, when those benefits commenced. In light of the limited medical evidence and Dr. Raby's repeated failure to provide the specific information requested, we cannot conclude that the agency's decision was arbitrary, capricious, or an abuse of discretion.

We end by noting that our decision does not prevent Boutté from reapplying for a discharge of her loan liability if she becomes permanently and totally disabled in the future. The government has represented in its appellate brief that the agency provides a "simple,

fill-in-the-blanks" form for an applicant's physician to complete so that the agency may properly assess the applicant's ability to work.  The government mentions for the first time on appeal that, after filing her previous applications, Boutté received but never returned the form, but there is no evidence in the record to either support or undermine this contention. In any event, should Boutté reapply she is now aware of the form and the consequences of failing to provide the specific information requested by the agency.

AFFIRMED.